## MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION, OPT-IN DISCOVERY, AND COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C 216

### I. INTRODUCTION

Defendants' own records demonstrate irrefutable FLSA violations and provide a clear case for "conditional certification" under 29 U.S.C. § 216(b). Defendants New Work City, Inc., d/b/a American Medical Personnel, Gladstone Headquarters, Inc., d/b/a American Medical Personnel, Vicki Stanley, and Tony Montesano (collectively, "AMP") have systematically shortchanged their hourly employees. AMP issued checks for payment of hourly wages on a daily, twice-weekly or other short-term basis without calculating or paying overtime worked during the workweek. This straightforward FLSA violation denied hourly employees overtime at the rate of one and one-half times their regular rates for hours worked in excess of 40 hours in a single workweek in violation of the FLSA, 29 U.S.C. § 207; 29 C.F.R. Chapter 552. In addition, AMP did not calculate or pay for travel time between client facilities during weeks in which their hourly State Tested Nursing Assistants ("STNAs"), Licensed Practical Nurses ("LPNs") and other similar job-titled employees worked 40 or more hours, in violation of the FLSA, 29 U.S.C. § 207; 29 CFR § 785.38. Other current and former employees who were subjected to these FLSA-violating practices should be given notice of this collective action and permitted to join.

### II. THE SIXTH CIRCUIT PROVIDES A "LENIENT" STANDARD FOR EARLY CONDITIONAL CERTIFICATION UNDER 29 U.S.C. 216(b)

Early conditional certification of FLSA collective actions is appropriate because, under §216(b) of the FLSA, any member of the putative class of opt-in plaintiffs who wishes to join the

lawsuit must file a written consent with the Court. To make an informed decision regarding whether or not to participate, potential opt-in plaintiffs must first receive notice.

In the operative section of the FLSA – 29 U.S.C. § 216(b) – "Congress has stated its policy that [employee-plaintiffs] should have the opportunity to proceed collectively." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 586 (6th Cir. 2009). Section 216(b) "expressly authorizes employees to bring collective … actions," providing that "[a]n action to recover the liability" prescribed by the FLSA for unpaid wages and overtime compensation "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Hoffman-LaRoche*, 493 U.S. at 167-68; 29 U.S.C. § 216(b).

Conditional certification is determined at the outset of the case – before discovery has occurred – and its sole effect is to provide notice to potential opt-ins. *Comer v. Wal-Mart Stores*, 454 F.3d 544, 546-48 (6th Cir. 2006) ("the notice stage" of a collective action "takes place at the beginning of discovery"); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (conditional certification's sole effect is "to facilitate the sending of notice to potential class members").

Prompt notice is all-important. *See Boyd v. Schwebel Baking Co.*, No. 4:15-cv-871, at *5 (N.D. Ohio, June 30, 2016) ("The 'opt-in' nature of the collective action 'heightens the need for employees to 'receiv[e] accurate and timely notice concerning the pendency of the collective action.'") (quoting *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 483 (S.D. Ohio 2014) (quoting *Hoffmann-La Roche*, 493 U.S. at 170)).

Unlike Rule 23 class actions, "[p]articipants in a § 216(b) collective action must affirmatively opt into the suit," and their claims are not commenced for limitations purposes until

2

their opt-in forms are filed with the district court. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008); 29 U.S.C. §§ 216(b) & 256. "For this reason," Ohio courts haves held "it is widely accepted that, at the notice stage of a § 216(b) collective action, the plaintiff's burden of establishing that he is similarly situated to potential opt-in class members is extremely light." *Smith v. Lowe's Companies, Inc.*, No. 2:04-CV-774, 2005 U.S. Dist. LEXIS 9763, at *13-14 (S.D. Ohio May 11, 2005) (citing *Cameron-Grant v. Maxim Healthcare Serv., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003); *Theissen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). Under *Comer*, conditional certification and notice are determined under a "lenient" standard requiring only "a modest factual showing." *Comer*, 454 F.3d at 546-48. *See Boyd*, at *6; *Waggoner v. U.S. Bancorp*, 110 F.Supp.3d 759, 764-765 (N.D. Ohio 2015); *Struck v. PNC Bank NA*, No. 2:11-CV-00982, 2013 U.S. Dist. LEXIS 19444, at *9 (S.D. Ohio Feb. 13, 2013).

As set forth below, Plaintiffs satisfy the "modest factual showing" required by courts in this Circuit for expedited discovery, court-ordered notice, and conditional certification. *Comer*, 454 F.3d at 546-48. Accordingly, Plaintiffs seek the information necessary to identify and notify all potential opt-in plaintiffs of their right to join this lawsuit. Proposed Notice to potential opt-ins and a proposed consent form is attached as Exhibits F and G. Conditional certification under § 216(b) should be granted, and notice should be sent to potential opt-ins enabling them to join.

### A. Time is of the Essence

FLSA cases are "collective actions" rather than class actions because other affected individuals must opt into the litigation, and thus "[t]he standard for granting conditional certification in an FLSA case is much lower than the standard for certification of a class." *Waggoner*, 110 F.Supp.3d at 768; *Smith*, at *5-6. *See* 29 U.S.C. § 216(b) (specifying that "[n]o

3

employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"). This distinct "'opt-in' nature of the collective action 'heightens the need for employees to 'receiv[e] accurate and timely notice concerning the pendency of the collective action.'"" *Boyd v. Schwebel Baking Co.*, No. 4:15-cv-871, at *5 (N.D. Ohio, June 30, 2016) (quoting *Hoffman-La Roche*, 493 U.S. at 170).

Unlike Rule 23 class actions, the filing of a collective action "does not toll the [2-3 year] statute of limitations for potential plaintiffs" applicable to FLSA actions. *Waggoner,* 110 F.Supp.3d at 772-73. *See Smith*, at *5-6 (citing 29 U.S.C. § 256(b); *Cahill v. City of New Brunswick*, 99 F. Supp. 2d 464, 479 (D.N.J. 2000)). *See also Stout*, at *6; *Struck,* at *7. Rather, "opt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the [collective] action," and "only a written consent to opt-in will toll the statute of limitations on an opt-in plaintiff's cause of action." *Grayson*, 79 F.3d at 1106-07.

The court observed in *Smith* that "[f]or this reason, it is widely accepted that, at the notice stage of a § 216(b) collective action, the plaintiff's burden of establishing that he is similarly situated to potential opt-in class members is extremely light." *Smith*, at *13-14 (citing *Cameron-Grant*, 347 F.3d at 1243; *Theissen*, 267 F.3d at 1102). In *Waggoner,* 110 F.Supp.3d at 770-71, this Court described plaintiff's burden as one requiring merely a "colorable basis" that plaintiff is similarly situated to the other prospective opt-in plaintiffs. *Id.* (citing *Castillo*, 302 F.R.D. at 486 ("plaintiffs met the 'fairly lenient standard' for conditional certification by alleging unlawful pay practices that affected plaintiff and the putative collective members in the same way.")) Here, Plaintiffs' declarations together with Defendants' own payroll records and Defendants' written policy provide a "colorable basis" for concluding Plaintiffs are similarly situated to all other

current and former hourly employees of Defendants.

### B. Conditional Certification and Notice Are Determined Under a "Lenient" Standard Requiring "A Modest Factual Showing"

Courts "should not apply a Rule-23 type analysis" in determining conditional certification and notice under § 216(b). *Struck,* at *10 ("the Sixth Circuit has admonished" district courts that Rule 23's "more stringent criteria for class certification" should not be applied under § 216(b)) (quoting *Wade v. Werner Trucking Co.*, 2012 U.S. Dist. LEXIS 156257, at *4 (S.D. Ohio Oct. 31, 2012) (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009))). Rather, under § 216(b), "the only threshold requirement plaintiffs must meet is to demonstrate that potential class members are 'similarly situated.'" *Smith*, at *7. *See Waggoner*, 110 F.Supp.3d at 768.

Courts use "a two-phase inquiry" to determine "whether proposed co-plaintiffs are … similarly situated for the purposes of the statute's requirements." *Comer*, 454 F.3d at 546. *See Adkins v. Phoenix Rising Behavioral Healthcare & Recovery, Inc.,* No. 5:15 cv 922, at *15 (N.D. Ohio Sept. 30, 2016) ("a two-step procedure") (quoting *Waggoner,* 110 F.Supp.3d at 765) (citing *Heibel v. U.S. Bank Nat'l Ass'n*, No. 2:11-CV-00593, 2012 WL 4463771, at *2 (S.D. Ohio Sept. 27, 2012)); *Cox v. Entertainment U.S.A. of Cleveland, Inc.*, No. 1:13CV2656, 2014 WL 4302535, at *1 (N.D. Ohio Aug. 29, 2014). *See also Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 U.S. Dist. LEXIS 181073, at *4 (S.D. Ohio Dec. 21, 2012); *Stout*, at *7 ("a two-tiered rubric"). The first stage – referred to by the Sixth Circuit as "the notice stage" – "takes place at the beginning of discovery," or, as the court explained in *Struck*, "before discovery has occurred." *Comer*, 454 F.3d at 546-48. *See Struck*, at *9.

The sole effect of this early, "conditional" certification is to provide notice to similarly-situated employees enabling them to opt in. *Comer*, 454 F.3d at 546 ("[a]t the notice stage, the

certification is conditional and by no means final"); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) ("the 'certification' we refer to here is only the district court's exercise of the discretionary power, upheld in *Hoffmann-La Roche*, to facilitate the sending of notice to potential class members"). Later, "[a]fter notice has been sent and discovery has been completed, the defendant can move to decertify the class, challenging the court's preliminary determination that other employees are similarly situated." *Sisson v. OhioHealth Corp.*, No. 2:13-cv-00517, 2013 U.S. Dist. LEXIS 162464, at *5 (S.D. Ohio Nov. 14, 2013) (citing *Comer*, 454 F.3d at 546).

Consequently, "at this initial notice stage, the plaintiff must only 'make a modest factual showing' that is he similarly situated to the other employees he is seeking to notify." *Waggoner*, 110 F.Supp.3d at 764-65 (citing *Comer*, 454 F.3d at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 497 (D. N.J. 2000))). The standard is "fairly lenient . . . [and] typically results in 'conditional certification.'" *Waggoner*, 110 F.Supp.3d at 764-65 (quoting *Morisky*, 111 F.Supp.2d at 497). *Accord*, *Schwab*, at *10 ("a fairly lenient standard"); *Boyd*, at *10 ("fairly lenient" standard); *Gomez v. ERMC Property Management Company, LLC*, 3:13-cv-1081, 2014 WL 1513945 at *1 (N.D Ohio. April 16, 2014) ("This is a 'fairly lenient standard,' requiring only 'a modest factual showing' that the named and potential plaintiffs were victims of a common, illegal plan or policy.").

### C. FLSA Plaintiffs May Proceed Collectively When "Their Claims Are Unified by Common Theories" of the Defendants' Liability

To establish that other employees are similarly situated, an FLSA plaintiff "need only show that [his] position [is] similar not identical, to the positions held by the putative class members." *Boyd*, at *7 (quoting *Lewis*, 789 F. Supp. 2d at 867). *Accord*, *Waggoner*, 110 F.Supp.3d at 765. For this purpose, district courts within the Sixth Circuit typically do not

"consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Waggoner*, 110 F.Supp.3d at 765 (citing *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)); *Struck,* at *11-12.

Potential opt-ins are similarly situated where their "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Sisson*, at *19 (citing *Lewis*, 789 F. Supp. 2d at 867-68). FLSA claims satisfy this standard if they are not "idiosyncratic"— this is, if they "are not predicated on the unique circumstances of any one" individual. *Stout*, at *12. The Sixth Circuit described "one example of an appropriate FLSA collective action" in *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). *See Waggoner*, 110 F.Supp.3d at 765 (discussing *O'Brien*). *O'Brien* emphasized that "[s]howing a 'unified policy' of violations is not required" for conditional certification. *Id.* However, "FLSA plaintiffs may proceed collectively in cases where 'their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Castillo*, 302 F.R.D. at 483-84 (quoting *O'Brien,* 575 F.3d at 585). *Accord*, *Waggoner*, 110 F.Supp.3d at 767; *Boyd*, at *10; *Schwab* at *4. Moreover, "[i]n *O'Brien,* the Sixth Circuit held that plaintiffs can have both state and FLSA claims certified as a collective action." *Martin v. Psalms, Inc.*, No. 2:10-cv-02532, 2011 WL 2882387 (W.D. Tenn. Jul. 15, 2011). In this case, Plaintiffs' and similarly situated employees' claims are in fact unified by common theories of Defendants' statutory violations – that Defendants' hourly employees are not compensated for overtime hours at the required rate by, among other things, Defendants' policy of issuing paychecks on a daily, twice-weekly or other short-term basis without properly tracking and paying overtime, and Defendants failed to calculate and pay Plaintiffs and similarly situated employees for travel time between client facilities during the workday. Defendants' policies and

7

practices were not predicated on the unique circumstances of any one individual, but were the result of company-wide policies and practices that ultimately violated the FLSA.

>    D.   **Conditional Certification Is Usually Based on the Pleadings and Any Affidavits or Declarations That Have Been Submitted**

Because conditional certification and notice are decided "before discovery has occurred," *see Struck,* at *9, the court's ruling is "usually based only on the pleadings and any affidavits which have been submitted…" *Hipp v. Liberty National Life Insurance Co.,* 252 F.3d 1208, 1218 (11th Cir. 2001). Indeed, other than reviewing their own paystubs, Plaintiffs have not engaged in any discovery up to this point, and Defendants have not offered Plaintiffs any basic time records, or any other documents, by way of Defendants' initial disclosures, and instead have submitted a description by category and location of documents in accordance with Fed. R. Civ. P. 26(a)(1)(A)(ii).

Where the plaintiff's pleadings and affidavits evince an unlawful policy, which is purported to applied similarly to several employees, the court grants conditional certification. *See, e.g.*, *Schwab*, at *7-8 (plaintiff satisfied the "modest factual showing" by submitting his own affidavit and affidavits from two coworkers); *Stout*, at *5, 11-12 (plaintiff's complaint and one supporting declaration warranted conditional certification of an FLSA collective action challenging "a company-wide policy not to pay field technicians for the time spent completing additional work after they left the jobsite"); *Sisson*, at *12-13 (plaintiff presented "enough of a factual basis to support conditional certification" although he "has not identified any proposed plaintiffs by name or submitted affidavits from any potential plaintiffs").

In *Waggoner,* 110 F.Supp.3d at 770-71, in granting certification based on declarations of plaintiffs containing only "generalized statements about [their] job duties," where plaintiffs did not indicate that employees were subject to the same compensation system, this Court, noting

8

that the "showing is quite thin", found that the "declarations of … plaintiffs have preliminarily demonstrated that [employees] performed similar duties that often were devoid of management responsibility, regularly worked in excess of forty hours [a] week, and were similarly compensated by a pay system that did not include overtime", demonstrating a colorable basis for their claims. In this case, the alleged violations are substantiated not only with Plaintiffs' declarations, but also with Defendants' own payroll records, and the "Show Me The Money" *Employment Policies* demonstrating palpable violations of the FLSA.

### III. **PLAINTIFFS HAVE SATISFIED THEIR BURDEN OF SHOWING THAT THE POTENTIAL OPT-IN PLAINTIFFS IN THIS COLLECTIVE ACTION ARE SIMILARLY SITUATED**

Plaintiffs' motion satisfies the "modest factual showing" required for conditional certification and notice. *Comer*, 454 F.3d at 548. Defendants are engaged in the business of providing medical staffing services, including staffing of STNAs, LPNs, and other similar job-titled employees to assisted living and long-term care facilities throughout Ohio. (Compl. at ¶ 8.)

Plaintiffs Jasmine Diaz, Jasmine Jones, and Constance Shannon, and the potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b) are current or former non-exempt employees of Defendants who are compensated on an hourly basis. (Compl. at ¶¶ 10, 14-19. *See* Ex. A, J. Jones Decl. ¶ 4; Ex. C, J. Diaz Decl. ¶ 4; Ex. H, C. Shannon Decl. ¶ 4.) The named Plaintiffs worked as STNAs and LPNs from approximately September, 2014 to the present providing medical and assisted living care to AMP's clients' facilities in Ohio. (Compl. at ¶¶ 8, 14-17; Ex. A ¶ 5; Ex. C ¶ 5; Ex. H ¶ 5) As Plaintiffs demonstrate by way of the attached declarations, payroll records, and AMP's own *Employment Policies*, AMP did not pay Plaintiffs for all hours worked in plain violation of Ohio law, in addition to its other FLSA violations. (Ex.

9

A; Ex. B, J. Jones Payroll Records; Ex. C; Ex. D, AMP "Show Me The Money" *Employment Policies* with notes written by J. Diaz; Ex. E, J. Diaz Payroll Records; Ex. H.)

Based on the above evidence and authority, AMP committed an indefensible and straightforward violation of the FLSA by engaging in a practice of failing to pay overtime compensation to Plaintiffs and similarly situated employees at a rate of one and one-half times their regular rate of pay for hours worked in excess of 40 hours in a single workweek – Defendants issued wage payments on a daily, twice-weekly or other short-term basis and regularly failed to properly track and pay overtime hours worked, and Defendants failed to pay travel time between client facilities during weeks in which hourly employees worked 40 or more hours. Indeed, although Defendants knew that Plaintiffs and similarly situated hourly employees were traveling between client facilities during the workday during weeks in which the employees worked more than forty hours, Defendants provided no means for the reporting of hours worked traveling between client facilities, and Defendants provided no compensation for their travel time. 29 C.F.R. § 785.38; (*See* Ex. A ¶¶ 6-8; Ex. C ¶¶ 7-8.). Under the Sixth Circuit's *O'Brien* decision, these claims may be certified in this case, and all hourly employees are similarly situated as to this count: They were all compensated through the same time keeping policies and payroll system and were all subject to the unlawful practices that resulted in Defendants' failure to pay them for all hours worked. *Martin v. Psalms, Inc.*, 2011 WL 2882387, at *8 (W.D. Tenn. Jul. 15, 2011); *O'Brien*, at 580.

In order to avoid calculating and paying overtime, Defendants regularly issued payroll payments on a daily, twice-weekly, or other short-term basis and therefore failed to consider the employee working in excess of 40 hours. (Compl. ¶ 22.) To that end, according to AMP's "Show Me The Money" *Employment Policies*, revised June, 2015, "[e]very weekday is payday at AMP!

10

Employees submitting a completed signed timecard by 11 am Monday through Friday can expect a check at 3 pm on the same day. It's our way of saying thanks." (Ex. D) Yet, employees were charged a $10 fee for *receiving* a paycheck outside of the 11:00 a.m. to 3:00 p.m. time frame. (*See* Ex. D). And, the frequency of paychecks was in actuality a way to avoid paying proper overtime. Furthermore, during orientation/on-boarding Plaintiffs and other employees of Defendants were told that AMP does not pay overtime compensation. (Ex. A ¶ 6; Ex. C ¶ 6; Ex. H ¶ 6.) Plaintiff Jasmine Diaz, who took notes during orientation/on-boarding, specifically wrote on her copy of the *Employment Policies* during on-boarding: "NO OT[;] But Holiday 1.5 is based on pay". (Ex. C ¶ 6)

Plaintiffs' actual pay records reflect Defendants' policy and practice of not paying overtime compensation. According to AMP's "Show Me The Money" *Employment Policies*, "[t]he work week begins Monday at 7 am and runs through the midnight shift on Sunday night."[1] (Ex. D). Though Defendants' policy and practice of issuing paychecks on an irregular basis does not inherently violate the FLSA, Defendants were nonetheless obligated to determine the correct amount of overtime compensation at the end of each workweek, and pay their hourly employees at the time-and-one-half rate for hours over forty. *See* 29 CFR § 778.106. They did not do so, and payroll records in Plaintiffs' Jasmine Jones's and Jasmine Diaz's possessions show Defendants violations of the FLSA in this regard.

**A. Representative Plaintiffs' Pay Records Demonstrate Extreme FLSA Violations**

In this case, Defendants issued multiple paychecks for the same workweeks in an apparent attempt to skirt the FLSA. Defendants' own payroll records document numerous instances in which Plaintiffs were not paid overtime. For example, during the work week

---

[1] Plaintiffs note that a workweek beginning at 7:00 a.m. Monday and ending 11:59:59 p.m. Sunday could fail to account for up to seven (7) hours of overtime hours worked by an employee.

11

beginning September 15, 2014, Plaintiff Jasmine Jones was paid for hours as follows:

| Date | Day | Hours of Work Paid |
|---|---|---|
| 9/15/2014 | Monday | 7.5 |
| 9/16/2014 | Tuesday | |
| 9/17/2014 | Wednesday | |
| 9/18/2014 | Thursday | 22.5 |
| 9/19/2014 | Friday | 11.5 |
| 9/20/2014 | Saturday | |
| 9/21/2014 | Sunday | |
| 9/22/2014 | Monday | 19.25 |

(Ex. A ¶ 10; Ex. B, 1-4)

In this example, Plaintiff was not paid overtime compensation for 20.75 hours (60.75 total hours) in violation of the FLSA, but was instead paid for 60.75 hours worked the same workweek at $12.50 per hour. (Ex. A ¶ 10; Ex. B, 1-4.)

During the workweek of December 21, 2015 – December 17, 2015, Plaintiff Jones was paid for hours as follows:

| Date | Day | Hours of Work Paid |
|---|---|---|
| 12/21/2015 | Monday | 15 |
| 12/22/2015 | Tuesday | 15.25 |
| 12/23/2015 | Wednesday | 6.5 |
| 12/24/2015 | Thursday | |
| 12/25/2015 | Friday | |
| 12/26/2015 | Saturday | |
| 12/27/2015 | Sunday | |
| 12/28/2015 | Monday | 68.75 |

(Ex. A ¶ 11; Ex. B, 5-8.) Here, the records reflect Plaintiff worked an astounding 105.5 hours from 12/21/2015 - 12/27, and is entitled to 65.5 overtime hours for which she has not been paid. (*Id.*) Further, although Ms. Jones seems to have been paid at higher rates for at least some of the hours worked towards the end of the week (15.5 hours at $17.75 per hour and 15 hours at $18 per hour), Defendants fell far short of paying overtime compensation at the adjusted regular

12

rate for all hours worked as required under the FLSA. 29 U.S.C. § 216(b).

Two weeks later, Ms. Jones was paid as follows:

| | | |
|---|---|---|
| 1/4/2016 | Monday | 53 |
| 1/5/2016 | Tuesday | 15 |
| 1/6/2016 | Wednesday | 14.5 |
| 1/7/2016 | Thursday | 7.5 |
| 1/8/2016 | Friday | 6.5 |
| 1/9/2016 | Saturday | |
| 1/10/2016 | Sunday | |

(Ex. A ¶ 12; Ex. B, 9-13.) In this example, from Monday, 1/4 to Friday, 1/8 Ms. Jones worked 43.5 hours at pay rates ranging from $12.00-$13.50, but again was not paid overtime compensation based on her regular rate, but was instead paid rates ranging from $12.00 - $13.50 per hour for all hours worked, including for hours worked over forty hours, in a plain violation of 29 U.S.C. § 207. (*Id.*)

Ms. Diaz's records similarly show violations of the FLSA – Defendants failed to pay overtime compensation to her during numerous workweeks, including the following:

| Date | Day | Hours of Work Paid |
|---|---|---|
| *4/25/2016* | *Monday* | 17 |
| 4/26/2016 | Tuesday | 6.5 |
| 4/27/2016 | Wednesday | 7.5 |
| 4/28/2016 | Thursday | 7.5 |
| 4/29/2016 | Friday | 8 |
| 4/30/2016 | Saturday | |
| 5/1/2016 | Sunday | |
| 5/2/2016 | Monday | 29.75 |

(Ex. C ¶ 10; Ex. E, 1-6.) In this example, from Monday, 4/25 to Sunday, 5/1, according to Defendant's records, Ms. Diaz worked 59.25 hours at pay rates ranging from $11.00 to $12.50, but she was not paid overtime compensation based on her regular rate for 76.25 hours worked – she was instead paid straight time at rates of $11.00 to $12.50, resulting in violations of 29

13

U.S.C. § 207. (*See* i*d.*)

The workweek of 5/9/2016 – 5/15/2016 shows similar violations of the FLSA:

| Date | Day | Hours of Work Paid |
|---|---|---|
| 5/9/2016 | Monday | 4.25 |
| 5/10/2016 | Tuesday | |
| 5/11/2016 | Wednesday | 7.5 |
| 5/12/2016 | Thursday | |
| 5/13/2016 | Friday | 15 |
| 5/14/2016 | Saturday | |
| 5/15/2016 | Sunday | |
| 5/16/2016 | Monday | 26.75 |

(Ex. C ¶ 11; Ex. E, 7-10.) During this week, Plaintiff Diaz was paid at hourly rates ranging from $12.00-$13.00. From Monday, 5/9 to Sunday, 5/15, Ms. Diaz was not paid overtime compensation based on her regular rate even though she worked 49.25 hours, in violation of 29 U.S.C. § 207. (*See id.*)

Though Plaintiff's time records maintained and required to be maintained by Defendants are needed to compute the actual amount of unpaid overtime, based on the payroll records attached, Defendants have engaged in a clear and indefensible policy and practice resulting in violations of the FLSA for which Plaintiffs and the FLSA Collective have been unquestionably harmed. And although Constance Shannon did not retain pay records, she testifies in her declaration that she experienced the same violations as well. (Ex. H).

### III. NOTICE TO POTENTIAL OPTS-INS BY MAIL AND EMAIL SHOULD BE ORDERED BY THE COURT

As to notice, Plaintiffs' motion incorporates the procedure typically ordered by courts in this district. Here, Plaintiffs have included a proposed notice and consent form which they propose be sent to all hourly employees of Defendants over the last three years should the Court grant this motion. (Ex. F, Proposed Notice; Ex. G, Proposed Consent Form.)

## IV. <u>CONCLUSION</u>

For the reasons addressed above, Plaintiffs respectfully request that the Court conditionally certify this case as an FLSA collective action under 29 U.S.C. § 216(b) and direct that notice be sent to potential opt-ins enabling them to join.

                Respectfully submitted,

                */s/ Ryan A. Winters*_____
                Joseph F. Scott (0029780)
                Ryan A. Winters (0086917)
                Scott & Winters Law Firm, LLC
                The Superior Building
                815 Superior Avenue E., Suite 1325
                Cleveland, OH  44114
                440-498-9100
                jscott@ohiowagewlawyers.com
                rwinters@ohiowagelawyers.com

                *and*

                Kevin M. McDermott II (0090455)
                McDermott Law LLC
                11925 Pearl Road, Suite 310
                Strongsville, Ohio 44136
                Telephone: 216-367-9181
                Facsimile: 440-846-1625
                kevin@mcdermottattorney.com

                *Attorneys for Plaintiffs*

## PROOF OF SERVICE

I certify that on this Thirteenth day of February, 2017 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

s/*Ryan A. Winters*
Ryan A. Winters (0086917)
