IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JASMINE DIAZ, *et al.*, | : |
| | :    Case No.:  5:16-cv-02319 |
|    Plaintiffs, | : |
| | :    JUDGE SARA LIOI |
| v. | : |
| | : |
| NEW WORK CITY, INC., DBA AMERICAN MEDICAL PERSONNEL, *et al.*, | :    **JOINT MOTION FOR APPROVAL OF SETTLEMENT** |
| | : |
|    Defendants. | : |

The parties respectfully and jointly move the Court to approve the proposed Settlement reached by the parties and memorialized in the *Agreement of Settlement and Release* ("Agreement") attached as Exhibit 1. The Settlement seeks to resolve all individual and collective wage-and-hour claims that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the named Plaintiffs and Opt-Ins representing a substantial percentage of the potential value of their claims. The Settlement was negotiated by experienced counsel during an August 16, 2017 mediation in Canton, Ohio with Mediator Scott M. Zurakowski. The parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

      Exhibit 1:    Agreement of Settlement and Release

      Exhibit 2:    Proposed Final Order and Judgment Approving Settlement and Dismissing Action

      Exhibit 3:    Schedule of Individual Payments

Exhibit 4: Proposed Notice to Potential Opt-Ins (with attached Consent and Release Form)

Exhibit 5: Declaration of Plaintiffs' Counsel

The following sections of this Motion explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## I.  THE LITIGATION

### A.  The Claims and Issues

Plaintiffs Jasmine Diaz, Jasmine Jones, and Constance Shannon filed this Action in the United States District Court for the Northern District of Ohio, Eastern Division on September 19, 2017. (Doc 1.) Plaintiffs' Complaint alleged that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime compensation to Plaintiffs and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek by issuing checks on a daily, twice-weekly or other short-term basis without properly tracking and compensating overtime hours worked, and by failing to pay travel time between client facilities during weeks in which hourly employees worked 40 or more hours. (*Id.* at ¶¶ 20-25.) Defendants filed an Answer to Plaintiffs' Complaint, denying all liability under any of Plaintiffs' claims. (Doc. 13.)

### B.  Class Certification

On February 13, 2017, Plaintiffs moved the Court to conditionally certify this case as an FLSA collective action pursuant to 29 U.S.C. § 216(b), expedite opt-in discovery, and provide court-supervised notice to the potential opt-in Plaintiffs, attaching declarations from Plaintiffs Jasmine Diaz, Jasmine Jones, and Constance Shannon (Doc. 17.) Further, on February 20, 2017,

Plaintiff issued Plaintiffs' Omnibus First Set of Discovery Requests to Defendants, including class discovery, and a Rule 30(b)(6) deposition notice concerning the existence and whereabouts of records. Though Defendants did not contest conditional certification of Plaintiffs' claims under the FLSA, Defendants objected to aspects of the notice the Plaintiffs requested the Court to approve, and expressly indicated opposition to the certifiability of Plaintiffs' claims under Ohio's wage-and-hour statute, R.C. § 4111.01, *et seq.* (Doc. 20, 1-2.)

### C. Discovery and Document Analysis

Prior to Plaintiffs' reply to Defendants' opposition to Plaintiffs' Motion for Conditional Certification, the parties jointly moved the Court for an extension of time to discuss a possible stay in order to pursue a due diligence exchange of information, settlement discussions, and mediation, (Doc. 21), which was approved by the Court (March 27, 2017 Order). Subsequently, on March 31, 2017, the parties jointly moved for the matter to be placed on inactive status for sixty days, pending the outcome of a due diligence exchange of documents and information, including a randomly selected sample of 10% of the putative opt-in class (Doc. 22), which was also granted by the Court (April 7, 2017 Order). Following considerable progress, including the production of unredacted pages of wage and hour records by Defendants of the randomly selected sample of 10% of the putative opt-in class, the parties filed a second sixty day extension to continue the due diligence exchange of materials so as to enable the negotiation of a possible global FLSA settlement with a private mediator. (Doc. 23, 1.) The Court subsequently granted the parties' second stipulation and joint motion for continued postponement of notice. (May 31, 2017 Order.)

The parties engaged in extensive discovery, and Defendants ultimately produced over 5,342 unredacted pages of voluminous wage-and-hour data and documents necessary to fully and

fairly evaluate the claims of the Plaintiffs and Potential Opt-Ins. Prior to entering into settlement negotiations, Plaintiffs' counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and back-up data and documents; Plaintiffs' counsel ultimately created spreadsheets for each member of the sample of 10% of the putative opt-in class and the named Plaintiffs collectively comprising of more than 85,000 data points from the wage and hour records produced by Defendants. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and compile estimates of the claimed damages. The analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## II.     THE NEGOTIATIONS

On August 16, 2017, the parties engaged in settlement negotiations in Canton, Ohio with the assistance of experienced and effective Mediator Scott M. Zurakowski.

The mediation was successful, resulting in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). Negotiations were conducted in two phases. The parties first reached an agreement regarding a total settlement amount to be made available to Plaintiffs and Opt-Ins, and then separately reached an agreement on Plaintiffs' counsel's attorneys' fees, cost reimbursements, and settlement administrative costs imbursements.

A handwritten Memorandum of Agreement was prepared and signed by the parties' counsel in the presence of the Mediator. Formal settlement documents, including the Agreement attached as Exhibit 1, were later prepared and executed for approval by the Court.

The result in this case was exemplary. As a result of this negotiated settlement, and without Defendants admitting liability, all opt-in Plaintiffs will receive 100% of their alleged

unpaid overtime <u>and</u> 99% of the liquidated damages they could have received had they proven a willful violation under 29 U.S.C. § 216(b). Without question this collective action settlement represents a fair, just, and reasonable resolution of this case.

### III.     THE SETTLEMENT TERMS

If approved by the Court, the proposed Settlement will make individual settlement payments available to Plaintiffs and Opt-Ins representing a substantial percentage of the potential value of their claims. The proposed payments to Plaintiffs and Opt-Ins—set forth in the Schedule of Individual Payments (Exhibit 3)—are based on an individual assessment of the proportionate number of full and part-time workweeks during the applicable three (3) year period. Potential Opt-Ins will be notified of the Settlement and that they may obtain their individual payments by opting into the case for the purpose of accepting the settlement and releasing any and all wage and-hour claims against Defendants. The proposed Notice, with its attached Consent and Release Form, is attached hereto as Exhibit 4.

In addition, the three named Plaintiffs, Jasmine Diaz, Jasmine Jones, and Constance Shannon, will receive service awards of $5,000.00 in recognition of their service to Plaintiffs' counsel and their contribution to achieving this Settlement. Plaintiffs' counsel will receive an agreed-upon amount for attorneys' fees and reimbursement of litigation costs.

As noted above, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' counsel was negotiated subsequently to and separately from the payments to the Plaintiffs and Opt Ins. The payment to counsel is the result of hard bargaining and represents a significant reduction from the total fees and costs expended in the prosecution of the Action.

### IV.     THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown below, Court approval is strongly supported by the case law.

### A.  The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc*., 2008 U.S. Dist. LEXIS 51544, 2008 WL 2468868, at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

In *Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) (citing *Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007)) (further citation omitted)), this Court used seven factors to evaluate whether the proposed settlement was fair and reasonable for purposes of the FLSA, 29 U.S.C. 216(b): "the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement." *See also Hedglin v. Maxim Healthcare Servs.,* N.D. Ohio No. 4:15-cv-2614, 2016 U.S. Dist. LEXIS 148275, at *3-4 (Oct. 26, 2016); *Crawford v. Lexington-Fayette Urban County Government*, 2008 U.S. Dist. LEXIS 90070, at * 13, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *Int'l Union*, 497 F.3d at 631 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)). "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of

the case." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at * 13 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008)(citing *Granada*, 962 F.2d at 1205-06)).

A key factor—the likelihood of success on the merits balanced against the amount and form of the settlement—strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendants' liability but also employees' damages. Indeed, wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. In contrast, the Settlement assures that the Plaintiffs and Opt-Ins will receive significant compensation. Given the uncertainties surrounding a possible trial in this matter, the certainty and finality of a settlement that will substantially benefit the Plaintiffs and Opt-Ins is in the public interest. *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *24 (S.D. Ohio May 30, 2012) (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiffs and Opt-Ins to this action.

The other factors are satisfied as well. Plaintiffs' counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The parties engaged in substantial document review, data analysis, and due diligence prior to the negotiations, and the issues were well understood. The settlement was reached as a result of arms-length negotiation between

parties represented by competent counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *4-5. Counsel on both sides support the Settlement, as do the Plaintiffs themselves. (*See* Exhibits 1, 5.)

### B. The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 WL 4724499, at *31 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)).

In the present case, the proposed individual settlement payments to the Plaintiffs and Opt-Ins—listed in the Schedule of Individual Payments (Exhibit 3)—represent over 99% of the potential maximum value of their claims, including liquidated damages. The allocations are based on the actual overtime hours worked during the applicable three (3) year period. This method of allocating the settlement proceeds in a wage-and-hour case is not only eminently equitable and fair, it is exemplary. Moreover, since attorney's fees and costs were negotiated separately, these settlement allocations go directly to Plaintiffs in their entirety, aside from the amounts subject to payroll taxes.

### C. The Service Awards to the Plaintiffs Are Proper and Reasonable

Reasonable service awards properly recognize the representative Plaintiffs' services on behalf of other beneficiaries of the settlement and their contribution to achieving a positive outcome. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373 (S.D. Ohio 1990).

In this Circuit, service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Indeed, the named

Plaintiffs Jasmine Diaz, Jasmine Jones, and Constance Shannon incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others", and "spent a good deal of time and effort in this case," by, among other things, conscripting and filing supporting affidavits in support of Plaintiffs' Motion for Conditional Certification, reviewing discovery documents and providing analysis to Counsel, and advising Counsel as to settlement and prosecution of the action. *See In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Furthermore, Plaintiffs Jasmine Diaz, Jasmine Jones, and Constance Shannon faithfully represented the interests of the Potential Opt-Ins and ably assisted Plaintiffs' counsel. Their contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed service awards of $5,000.00 are reasonable and well-earned.

**D.  Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), cert. denied, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorneys' fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502-03 (6th Cir. 1984)).

Courts look favorably on separate negotiation of FLSA damages and attorneys' fees. *See Cisek v. Natl Surface Cleaning, Inc.*, 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997); *Cruz v. Vel-A-Da, Inc.*, 1993 WL 659253 (N.D. Ohio 1993).

In the present case, the efforts of Plaintiffs' counsel resulted in proposed settlement payments to the named Plaintiffs and Opt-Ins representing over 99% of the potential value of their claims. The proposed payment to Plaintiffs' counsel—negotiated *subsequently and separately* from the payments to Plaintiffs and Opt-Ins—is the result of hard bargaining and represents a significant reduction from the total fees and costs expended in the prosecution of the Action. The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel, attached as Exhibit 5.

Prosecuting complex litigation on a class basis is always difficult and time-consuming. The tasks required of Plaintiffs' counsel in this case included pre-litigation investigation of Plaintiffs' claims and the identities of potential corporate defendants; preparation of the Complaint; negotiation and submission of the parties' Rule 26(f) report; as well as extensive research and briefing of Plaintiffs' Motion for Conditional Certification.

The activities of Plaintiffs' counsel only intensified following Plaintiffs' Motion for Conditional Certification. The parties filed joint stipulations for postponement and continued postponement of notice (docs. 21, 22, 23), and Plaintiffs extensively analyzed Defendants' produced documents and information, including wage-and-hour records of the randomly selected 10% sample of the putative opt-in class and the named Plaintiffs. The production included back-up data of the 10% sample and named Plaintiffs showing extensive wage-and-hour information and time keeping data including dates worked, rates, hours reported, hours paid, wage payment amounts, deductions, start times, end times, lunch breaks, and shift data summaries showing shift

details including job descriptions, clients worked for, and workflow status. Prior to entering into settlement negotiations, Plaintiffs' counsel created spreadsheets for each member of the 10% sample of the putative opt-in class and the named Plaintiffs comprising of more than 85,000 data points from the over 5,342 pages of wage and hour records produced by Defendants. Plaintiffs provided the complete data analysis to Defendants, and the parties negotiated an agreed resolution to be approved by the Court during a mediation with Mediator Scott M. Zurakowski.

It is notable that, although this matter is not to be settled pursuant to a percentage award as common in a class settlement, and in fact Plaintiffs' attorneys' fees were negotiated after Plaintiffs' and Opt-Ins' claims were settled, Plaintiffs' attorneys' fees award comprise of 21.4% of the overall amounts recovered. *See Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (discussing the National Economic Research Associates study, cited in 2000 as "[t]he most complete analysis of fee awards in class actions conducted to date." The study found that "regardless of size, attorneys' fees average approximately 32% of the [class action] settlement."). Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V.     CONCLUSION

For the reasons addressed above, the parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

Respectfully submitted,

*/s Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
Scott & Winters Law Firm, LLC
The Superior Building
815 Superior Avenue E., Suite 1325
Cleveland, OH 44114
440-498-9100
jscott@ohiowagewlawyers.com
rwinters@ohiowagelawyers.com

*Counsel for Plaintiffs*

*/s Edmond J. Mack (via email consent)*
Lee E. Plakas (0008628)
David L. Dingwell (0059159)
Edmond J. Mack (0082906)
220 Market Avenue South, Eighth Floor
Canton, Ohio 44702
Telephone: (330) 455-6112
Facsimile: (330) 455-2108
Email: emack@lawlion.com

*Counsel for Defendants, New Work City, Inc., dba American Medical Personnel, Gladstone Headquarters, Inc., dba American Medical Personnel, Vicki Stanley, and Tony Montesano*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

                                                       *s/ Ryan A. Winters*
                                                       Ryan A. Winters (0086917)