## AGREEMENT OF SETTLEMENT AND RELEASE

Subject to approval by the United States District Court for the Northern District of Ohio, Eastern Division, District Judge Sara Lioi presiding, this Agreement of Settlement and Release ("Agreement") is entered into between Plaintiffs, Jasmine Diaz, Jasmine Jones, and Constance Shannon (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, as defined herein, and New Work City, Inc., dba American Medical Personnel, Gladstone Headquarters, Inc., dba American Medical Personnel, Vicki Stanley, and Tony Montesano (collectively, "Defendants") this 16th day of August, 2017.

## RECITALS

1.      Plaintiffs filed this Action in the United States District Court for the Northern District of Ohio, Eastern Division on September 19, 2016. (Doc. No. 1).

2.      On January 6, 2017, Defendants filed an Answer to the Complaint (Doc. No. 13), denying all liability under any of Plaintiffs' claims.

3.      The Parties agree that bona fide disputes exist regarding Plaintiffs' claims.

## Conditional Certification and Notice

4.      On February 13, 2017, the Plaintiffs filed its Motion for Conditional Certification (Doc. No. 17) pursuant to 29 U.S.C. § 216 of the FLSA, requesting certification of this case on behalf of Plaintiffs and other similarly situated persons, defined as:

> All present and former hourly employees of New Work City, Inc., dba American Medical Personnel or Gladstone Headquarters, Inc., dba American Medical Personnel who worked as state tested nursing assistants (STNAs) or licensed practical nurses (LPNs) from September 19, 2013 to the present.

5.      By filing dated March 13, 2017, Defendants' response to Plaintiffs' Motion (Doc. No. 20) did not object to conditional certification of the FLSA claims and reserved the right to challenge certification later in the proceedings, but it did challenge the notice Plaintiffs requested to be sent to the collective action members in connection with conditional certification.

6.      The Court's March 27, 2017 order directed Plaintiffs to submit its reply in support of its Motion for Condition Certification by April 3, 2017.  On March 31, 2017, however, the Parties jointly moved the Court to postpone the ruling upon the pending Motion for Conditional Certification and directing the issuance of any notice related thereto so they could explore avoiding the cost of litigation by exchanging due diligence materials and then negotiating a global FLSA settlement with a private mediator. (Doc. No. 22).  The requested postponement of notice was granted by the Court and later extended by further stipulation and order.  (Doc. No. 23).

**Discovery and Due Diligence**

7.     Pursuant to the Court's Orders and the Parties' stipulations, on May 23, 2017, June 6, 2017, and June 22, 2017 Defendants produced documentation needed to fully and fairly evaluate the claims of the Plaintiffs and Potential Opt-Ins.  The production included employee identification information for all Potential Opt-Ins and a more extensive production for a randomly selected sample of 10% of the Potential Opt-Ins, including individualized payment records and timesheets.  In addition, Defendants also provided the wage payment records and individual timesheets of the named Plaintiffs themselves.  In total, Defendants produced over 5,343 pages of wage and hour records to Plaintiffs, allowing a full evaluation of the Plaintiffs and the Potential Opt-Ins claims.

8.     Prior to entering into settlement negotiations, Plaintiffs' Counsel conducted a comprehensive investigation and extensively analyzed the wage-and-hour information and timekeeping data provided by Defendants. Similar review and analyses were conducted by Defendants.

**Settlement Negotiations**

9.     After exchanging detailed position materials on July 28, 2017 and August 15, 2017, the Parties attended a mediation in Canton, Ohio on August 16, 2017 with attorney Scott M. Zurakowski of Krugliak, Wilkins, Griffiths, & Dougherty Co., LPA, a skilled mediator in complex wage-and-hour class action litigation.

10.     The negotiation lasted nearly eight hours, involving thorough review of wage and hour documentation and extensive discussion of the strengths and weaknesses of the Parties' positions.

11.     The mediation was successful, with the Parties first reaching agreement regarding a total settlement amount to be made available to Plaintiffs and Opt-Ins, and then separately reaching agreement on Plaintiffs' Counsel's attorneys' fees and litigation costs.  The terms of the global settlement are fully incorporated within this Agreement.

12.     Defendants deny and continue to deny all of the allegations embodied in this Action. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendants have agreed to settle the Action in accordance with the terms and conditions set forth in this Agreement solely to avoid the burden, expense, and uncertainty of continued litigation.

13.     Plaintiffs' Counsel have thoroughly investigated the facts and diligently pursued pre-notice discovery and due diligence, extensive analyses of wage-and-hour information and computerized timekeeping data produced by Defendants. Based on their independent investigation and evaluation of the facts and law relating to the claims asserted in this Action, including the risk of significant delay and Defendants' defenses, Plaintiffs' Counsel believe the Settlement is fair, adequate, reasonable, and in the best interests of Plaintiffs and Potential Opt-Ins.

14.     Wherefore, subject to approval by the Court, the Parties have reached a binding agreement to settle the Action upon the terms and conditions set forth below.

## TERMS OF THE AGREEMENT

### 1.     Definitions Used in this Agreement.

A.     "Action" means the civil action in the United States District Court for the Northern District of Ohio, Eastern Division entitled *Diaz, et al. v. New Work City, Inc., et al.*, Case No. 5:16-cv-02319.

B.     "Administrative Costs" means the reasonable amount to be paid to a third-party settlement administrator for all costs connected with consummating the terms of this Agreement.

C.     "Agreement" or "Settlement Agreement" shall mean this Agreement of Settlement and Release.

D.     "Approval Date" means the date the Court enters an order approving this Settlement including the proposed procedure for notifying Potential Opt-Ins of their eligibility to participate in the Settlement ("Approval Order"). The "Effective Date" of this Settlement shall be 31 calendar days after the Approval Order or, if the Approval Order is appealed, the day after the Approval Order has been affirmed and is not subject to further appeal.  A proposed Approval Order is attached as Exhibit 1.

E.     "Defendants" shall mean and New Work City, Inc., dba American Medical Personnel, Gladstone Headquarters, Inc., dba American Medical Personnel, Vicki Stanley, and Tony Montesano, and all of their former, current, and respective officers, directors, agents, attorneys, parents, predecessors, successors, subsidiaries, and related and affiliated entities.

F.     "Defendants' Counsel" shall mean Lee E. Plakas, David L. Dingwell, and Edmond J. Mack of Tzangas Plakas Mannos Ltd.

G.     "Total Settlement Amount" means the amount of Three Hundred and Twenty-Seven Thousand Dollars and Zero Cents ($327,000.00).  This payment will cover the proposed individual settlement payments to Plaintiffs and Opt-Ins, the proposed service awards to the named Plaintiffs, the proposed attorneys' fees and litigation costs to Plaintiffs' Counsel, and some or all of the Administrative Costs. Plaintiffs will pay the remaining costs of settlement administration to the third party settlement administrator.

H.     "Opt-Ins" means and includes the Potential Opt-Ins who opt-in pursuant to the Notice and Opt-In Process set forth below in Paragraph 2(C), and who therefore receive Individual Payments consistent with Paragraph 2(B) below.

I.     "Party" or "Parties" shall mean Plaintiffs and Defendants, as defined herein.

3

J.     "Plaintiffs" shall mean and include the named Plaintiffs in the Action, Jasmine Diaz, Jasmine Jones, and Constance Shannon.

K.     "Plaintiffs' Counsel" shall mean Joseph F. Scott, Ryan A. Winters, and Kevin M. McDermott II of the Scott & Winters Law Firm, LLC.

L.     "Potential Opt-Ins" means and includes the similarly-situated persons defined as follows: "All present and former hourly employees of New Work City, Inc., dba American Medical Personnel or Gladstone Headquarters, Inc., dba American Medical Personnel who worked as state tested nursing assistants (STNAs) or licensed practical nurses (LPNs) from September 19, 2013 to the present who worked in excess of 40 hours per week and were not compensated for each hour worked in excess of 40 hours per week at one and one-half times his or her regular rate of pay."

M.     "Released Claims" means any and all individual, class, or collective wage-and-hour claims that were or could have been brought based on the specific factual allegations contained in the Action, that occurred or are alleged to have occurred at any time through the Approval Date, including without limitation claims for off-the-clock work, unpaid wages, unpaid overtime compensation, penalties, liquidated damages, interest, attorneys' fees or expenses, and further including claims under the Fair Labor Standards Act, the Ohio Minimum Fair Wage Standards Act, and the common law.

N.     "Released Parties" means Defendants, including their predecessors, successors and assigns, their current and former direct and indirect parents, affiliates, subsidiaries, divisions, and related business entities, directors, shareholders, employees, agents, and representatives.

O.     "Released Period" shall mean the period beginning September 19, 2013 and ending on the Effective Date.[1]

P.     "Settlement" means the settlement of the Action described and defined by, and according to the terms of, the Agreement.

Q.     "Settlement Administrator" means the third-party settlement administrator selected by the Parties to administer the terms of this Agreement.

R.     "Spreadsheet" means the electronic spreadsheet which includes the name, Employee ID, last known address, job title, and employee status of all Plaintiffs and Potential Opt-ins, and their amount of Unpaid Overtime.

S.     "Unpaid Overtime" means the amount of unpaid overtime compensation that was not provided to Plaintiffs or the Potential Opt-Ins by Defendants

---

[1] In the event this Action did not settle, Defendants intended to argue that a 2-year statute of limitation applies to Plaintiffs' claims. However, for purposes of settlement only, the Parties apply the 3-year statute of limitations period, which was tolled by agreement of the Parties. (Doc. No. 22).

4

for hours worked in excess of 40 hours per week from September 19, 2013 to August 31, 2017.

**2.    Settlement Amount and Allocation.**

A.    Total Settlement Amount.  Subject to the terms and conditions of this Agreement, the total amount Defendants will pay and/or make available for distribution, in final and complete settlement of the Action, is Three Hundred and Twenty-Seven Thousand Dollars and Zero Cents ($327,000.00).  Subject to approval by the Court, the Total Settlement Amount will be paid and/or made available to Plaintiffs, Opt-Ins, Plaintiffs' Counsel, and the Settlement Administrator as provided in this Paragraph 2.

B.    Individual Payment Fund.  The Individual Payment Fund shall be Two Hundred and Thirty-Two Thousand Dollars and Zero Cents ($232,000.00). Subject to approval by the Court, the Individual Payment Fund shall be paid and/or made available to Plaintiffs and Opt-Ins according to the Schedule of Individual Payments (Exhibit 2) ("Individual Payments"). The proposed Individual Payments were determined as follows:

Step 1: Plaintiffs' and Potential Opt-Ins' Unpaid Overtime. Unpaid Overtime was calculated by determining the amount of hours each Plaintiff and Potential Opt-In worked in excess of 40 hours per week from September 19, 2013 to August 31, 2017 multiplied by half their regular rate of pay.

Step 2: Eligible Payment Amount for Unpaid Overtime. The Individual Payment Fund was divided by the total of all Unpaid Overtime of the Plaintiffs and Potential Opt-Ins to determine the Eligible Payment Amount for Unpaid Overtime.

Step 3: Individual Payment Amounts. The Individual Payments were calculated by multiplying the amount per Eligible Payment Amount for Unpaid Overtime by respective Plaintiff's or Potential Opt-In's Unpaid Overtime.

C.    Notice and Opt-In Process.  Potential Opt-Ins shall be notified of the Settlement and may obtain their Individual Payments as follows: The proposed Notice (Exhibit 3), with its attached Consent and Release Form, shall be mailed to all Potential Opt-Ins using the settlement administration procedures prescribed below. Potential Opt-Ins may opt in and obtain their Individual Payments by signing and returning the Consent and Release Form within sixty (60) calendar days after mailing of the Notice.  As explained in the Notice, Potential Opt-Ins who timely sign and return the Consent and Release Form opt into the Action for the purpose of accepting the terms of this Settlement, including the release of claims.

D.    Service Awards and Global Release by Plaintiffs. Subject to approval by the Court, and in exchange for their execution of this Agreement and their individual releases of claims, Plaintiffs, Jasmine Diaz, Jasmine Jones, and Constance Shannon shall receive service awards in the amount of Five Thousand Dollars and Zero

5

Cents ($5,000.00) in recognition of their service to Plaintiffs' Counsel and their contribution to achieving this Settlement. The service awards shall be in addition to the Individual Payments to Plaintiffs according to the Schedule of Individual Payments. To receive Individual Payments and service awards, Plaintiffs must sign Consent and Release Forms as well as this Agreement.  In consideration of their service awards and Individual Payments, Plaintiffs expressly agree to fully release the Released Parties for any and all individual, class, and collective claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown.

E.    Tax Treatment of Individual Payments and Service Awards. For Individual Payments as set forth in Paragraph 2(B) above, fifty percent (50%) of the amount(s) paid to each Plaintiff and Opt-In under this Agreement shall be reported by the Settlement Administrator as wages to the appropriate taxing authorities on a Form W-2 issued to the Plaintiff and Opt-In with his or her taxpayer identification number, and shall be subject to deduction of the employee share of applicable taxes and withholdings as required by federal, state, and local law. The remaining fifty percent (50%) of the amount(s) paid to each Plaintiff and Opt-In will be allocated to liquidated damages, interest and/or penalties and reported by the Settlement Administrator as non-wage income to the appropriate taxing authorities on a Form 1099 issued to the Plaintiffs and Opt-Ins. Service awards as set forth in Paragraph 2(D) above will be treated as non-wage income and reported by Defendants to the appropriate taxing authorities on a Form 1099 issued to each Plaintiff.

F.    Attorneys' Fees and Litigation Costs. Subject to approval by the Court, the agreed sum of Seventy Thousand Dollars and Zero Cents ($70,000.00) will be distributed to Plaintiffs' Counsel as and for attorneys' fees and reimbursement of litigation costs reasonably incurred in pursuing the Action.  Defendants will issue a Form 1099 to Plaintiffs' Counsel with respect to these distributions. Plaintiffs' Counsel will advise Defendants of the respective amounts to each firm or attorney.

G.    Administrative Costs.  Subject to approval by the Court, the agreed sum of Ten Thousand Dollars and Zero Cents ($10,000.00) will be distributed to the Settlement Administrator for payment of Administrative Costs.  All Administrative Costs that may be incurred or required to consummate the terms of this Settlement Agreement in excess of the amount paid by Defendants shall be paid to the Settlement Administrator by Plaintiffs.

H.    Unclaimed Individual Payment Fund. Individual Payments to Opt-Ins who do not timely cash their checks during the 90-day negotiability period shall revert back to Defendants consistent with the Settlement administration procedures prescribed below.

## RELEASE OF CLAIMS

1.    **Release**.  In accordance with the terms of this Agreement, Plaintiffs and all Opt-Ins who sign and return a Consent and Release Form (collectively, "the Releasing Parties"), shall be deemed to have irrevocably and unconditionally released

and discharged the Released Parties with respect to the Released Claims. This release is intended to and shall be effective as a release of and bar to all Released Claims that have accrued as of the Effective Date.

**2.      Release of Attorneys' Fees and Litigation Costs.** Plaintiffs and Plaintiffs' Counsel agree that the payment of attorneys' fees and litigation costs to Plaintiffs' Counsel pursuant to this Agreement includes, satisfies, and extinguishes all claims for attorneys' fees and expenses recoverable in the Action. In consideration of such payment, Plaintiffs' Counsel release and waive any and all claims to further attorneys' fees and expenses in connection with the Action.

### APPROVAL OF SETTLEMENT AND DISMISSAL OF ACTION

**1.      Cooperation.**   The Parties agree to cooperate and take all steps necessary and appropriate to obtain final Approval of this Settlement, effectuate its terms, and cause the Action to be dismissed with prejudice.

**2.      Fair, Adequate and Reasonable Settlement.**  The Parties agree that the Settlement is fair, adequate, and reasonable and will so represent to the Court.

**3.      Joint Motion for Court Approval of Settlement.**  Within five (5) business days after the execution of this Agreement, the Parties will jointly move the Court for approval of the Settlement and entry of the proposed Approval Order (Exhibit 1) granting final approval of the Settlement as fair, adequate, and reasonable, approving the Total Settlement Amount, approving the proposed Schedule of Individual Payments to Plaintiffs and Potential Opt-Ins, approving the proposed service awards to Plaintiffs, approving the payment of attorneys' fees and litigation costs to Plaintiffs' Counsel, and dismissing the Action with prejudice.  If the Court does not enter the proposed Approval Order, or decides to do so only with material modifications to the terms of this Agreement, or if the Approval Order is reversed or vacated by an appellate court, then this Agreement shall become null and void, unless the Parties agree in writing to modify this Agreement and the Court approves this Agreement as modified.

**4.      Dismissal of the Action With Prejudice.**  Subject to and conditioned upon the approval by the Court of the Settlement in accordance with the terms and conditions of this Agreement, Plaintiffs and Plaintiffs' Counsel agree that this Action shall be dismissed with prejudice as to all Released Parties and all Released Claims, with all Parties responsible for their own costs and attorneys' fees, except as otherwise specifically provided in this Agreement.

**5.      Filing Under Seal.**  The Parties agree that any documents containing the Parties' confidential employee or business records, including declarations and accompanying exhibits filed in support of a motion for approval of the Settlement, shall, with the Court's approval, be filed under seal.

## SETTLEMENT ADMINISTRATION

**1.    Settlement Administrator.**  The Parties agree that Dahl Administration shall administer this Settlement.

**2.    Spreadsheet and Schedule of Individual Payments**. Defendants will provide the Settlement Administrator with the Spreadsheet and the Schedule of Individual Payments (Exhibit 2) within fourteen (14) calendar days after the Approval Date. New or updated contact information may be submitted to the Settlement Administrator by Plaintiffs' Counsel at any time. All Parties, Plaintiffs' Counsel, Defendants' Counsel, and the Settlement Administrator will keep all information confidential. The Parties, Plaintiffs' Counsel, and Defendants' Counsel shall provide the Settlement Administrator with all necessary cooperation, including but not limited to the execution of all documents necessary to administrator the Settlement.

**3.    Updating by the Administrator.** The Settlement Administrator will check for new or better addresses using the National Change of Address Database.

**4.    First Mailing of Notice.** Within seven (7) calendar days after the Effective Date, the Settlement Administrator will mail the proposed Notice (Exhibit 3), with its attached Consent and Release Form, to all Potential Opt-Ins using the Spreadsheet and the Schedule of Individual Payments provided by Defendant. The Notice shall inform the Potential Opt-Ins of their eligibility to participate in the Settlement by signing and returning Consent and Release Forms along with completed W-4 and W-9 Forms, as well as the amount of their respective Individual Payment if they do so.

**5.    Undeliverable Notices.** If a Notice sent to a Potential Opt-In is returned as undeliverable, the Settlement Administrator will promptly undertake reasonable steps, including the use of the Experian File One database, to determine the Potential Opt-In's current address.

**6.    Second Mailing of Notice.** If an additional address is located for a Potential Opt-In whose notice was returned as undeliverable, the Settlement Administrator will resend the Notice to that Potential Opt-In at the updated address.

**7.    Consent Deadline.** The Consent Deadline for a Potential Opt-In shall be sixty (60) calendar days after the First Mailing of Notice or, in the case of a Potential Opt-In for whom the first Notice was returned as undeliverable and an additional address was found, sixty (60) calendar days after the Second Mailing of Notice to that Potential Opt-In. Potential Opt-Ins will only be entitled to receive their Individual Payments if they sign and postmark a Consent and Release Form on or before the Consent Deadline.

**8.    Untimely Consent Forms.** If a Potential Opt-In attempts to participate in the Settlement by returning a Consent and Release Form after the Consent Deadline, Defendants may, in their sole discretion, accept the untimely Consent Form or instruct the Settlement Administrator to do so.

9.    **Reports.**

A.    Thirty (30) calendar days after the First Mailing of Notice, and at monthly intervals thereafter, the Settlement Administrator shall provide to all counsel a report setting forth the total number of Potential Opt-Ins to whom Notices were mailed, the number of Notices returned as refused, undelivered or undeliverable, and the number of Notices resent.

B.    Within fifty-five (55) calendar days after the First Mailing of Notice, the Settlement Administrator shall provide to all counsel the First Opt-In Report which shall identify the Plaintiffs and those Opt-Ins who signed and returned the Consent and Release Forms, along with completed W-4 and W-9 Forms, within forty-five (45) calendar days following the date of the First Mailing of Notice ("Initial Opt-Ins"). The First Opt-In Report shall include notice to all counsel the amount necessary to fund the Individual Payment Fund to provide for Individual Payments to the three Plaintiffs and the Initial Opt-Ins.

C.    Within seven (7) calendar days following the final Consent Deadline for all Potential Op-Ins, the Settlement Administrator shall provide to all counsel a Second Opt-In Report which shall identify all of those remaining Opt-Ins who timely sign and return the Consent and Release Forms, along with the W-4 and W-9 Forms, after the First Opt-In Report ("Remaining Opt-Ins"). The Second Opt-In Report shall include notice to all counsel the final amount necessary to fund the Individual Payment Fund to provide for Individual Payments to all of the Remaining Opt-Ins. The Administrator shall provide to all counsel proof that the Consent and Release Forms were submitted on or before the Consent Deadline. Plaintiffs' Counsel and Defendants' Counsel will review the proof of timeliness and cooperate in good faith to resolve any timeliness issues within seven (7) calendar days.

10.    **Payment of Service Awards, Attorneys' Fees, and Administrative Costs.**  Within seven (7) calendar days after the Effective Date, Defendants shall issue checks in the amount of the service awards to Plaintiffs, Jasmine Diaz, Jasmine Jones, and Constance Shannon, will issue checks to Plaintiffs' Counsel for the attorneys' fees and litigation costs, and will issue a check to the Settlement Administrator for payment of Administrative Costs. Defendants will issue IRS Forms 1099 to Plaintiffs for the service awards paid under this Agreement, Plaintiffs' Counsel attorneys' fees and costs paid under this Agreement, and the Settlement Administrator for Administrative Costs paid under this Agreement.

11.    **Wiring of Individual Payment Fund.** Defendants shall wire the first installment of the Individual Payment Fund within seven (7) calendar days following its receipt of the First Opt-In Report prepared by the Administrator ("First Installment"). Defendants shall wire the second installment of the Individual Payment Fund within fourteen (14) calendar days following its receipt of the Second Opt-In Report (after having reviewed and resolved any timeliness issues as set forth in Paragraph 9(C)) ("Second Installment").

**12.    Payment of Individual Payments by Administrator**. Within seven (7) calendar days following the wiring of the First Installment by Defendants, the Settlement Administrator will issue Individual Payments to the Plaintiffs and the Initial Opt-Ins. Within seven (7) calendar days following the wiring of the Second Installment by Defendant, the Settlement Administrator will issue Individual Payments to the Remaining Opt-Ins. Checks to Plaintiffs and all Opt-Ins shall remain negotiable for ninety (90) calendar days but shall be deemed cancelled thereafter.

**13.    Auditing.** Plaintiffs' and Defendants' Counsel shall have the right to review and audit the activities of the Settlement Administrator at reasonable times and upon reasonable notice to the Settlement Administrator and the other Party's Counsel. Information obtained will be held in confidence, except as may be necessary to seek relief from the Court.

**14.    Closing of Administration.**  When the Consent Deadline has expired for all Potential Opt-Ins, Individual Payments have been issued to all Opt-ins who have signed and returned Settlement Consent and Release Forms along with completed W-4 and W-9 Forms, and the 90-day negotiability period has elapsed for all outstanding checks, the Settlement Administrator shall so inform all counsel. Ten (10) calendar days thereafter, the administration of the Settlement shall close and the Settlement Administrator shall wire to Defendants any remaining funds.

## NO ADMISSION

Nothing contained in this Settlement Agreement shall be construed or deemed an admission of liability, culpability, negligence or wrongdoing on the part of Defendants, and Defendants deny any such liability. Each Party has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

## CONSTRUCTION

The Parties agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party participated in the drafting of this Settlement Agreement.

## MODIFICATION

This Settlement Agreement may not be changed, altered or modified, except in a writing signed by the Parties and approved by the Court.

## WAIVERS, ETC. TO BE IN WRITING

No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the

extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

## BINDING ON ASSIGNS

This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

## COUNTERPARTS AND ELECTRONIC SIGNATURES

This Settlement Agreement may be executed in two or more counterparts, and transmitted by facsimile or electronic mail, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same Settlement Agreement, which shall be binding upon and effective as to all Parties.  Copies of original execution pages of this Settlement Agreement shall have the same force and effect as the originals themselves.

## JURISDICTION

The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Settlement Agreement to the extent permitted by law, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

## NON DISPARAGEMENT

Plaintiffs agree not to make any disparaging statements concerning Defendants or their former or current owners, managers, officers, directors, employees, agents, or attorneys.  This non-disparagement clause shall not in any way prevent Plaintiffs from disclosing any information in response to a lawsuit subpoena or court order requiring disclosure of this information.

## FUTURE INQUIRIES

If Plaintiffs' Counsel receive inquiries from persons who would have been Potential Opt-Ins under this Agreement, they may inform such persons about this Settlement including the provision enabling Defendants to accept untimely Consent and Release Forms in its sole discretion.

## COMMUNICATIONS WITH THE MEDIA

No Party or counsel for a Party shall issue a press release or otherwise notify or initiate communication with the media about the Settlement or terms of the Settlement

Agreement or disclose any of the terms of the Settlement Agreement through oral, written, recorded or electronic communications. If Plaintiffs' Counsel or Defendants' Counsel are contacted by the media, Plaintiffs' Counsel and Defendants' Counsel shall be permitted to respond to such inquiries by stating only that the Parties have reached a settlement agreement subject to the Court's approval or, if contacted after the issuance of the Final Approval Order, Plaintiffs' Counsel and Defendants' Counsel shall be permitted to respond to such inquiries by stating only that the Parties reached a settlement agreement which they believe is a fair and reasonable settlement of disputed claims.  Plaintiffs' Counsel and Defendants' Counsel may not disclose any of the specific terms of the Settlement Agreement.

## SEVERABILITY

Should any clause, sentence, provision, paragraph, or part of this Settlement Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

## NO WAIVER

The failure to enforce at any time, or for any period of time, any one or more of the terms of this Agreement shall not be a waiver of such terms or conditions. Moreover, it shall not be a waiver of such Party's right thereafter to enforce each and every term and condition of this Agreement.

## AUTHORITY

Each signatory on behalf of Plaintiffs and Defendants represents and warrants that such Party has full authority and power to make the releases and agreements contained in this Agreement on behalf of all Parties. Each signatory further represents and warrants that such Party has not assigned, encumbered, or in any manner transferred all or a portion of the Claims covered by the releases and agreements contained herein.

## GOVERNING LAW

This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Ohio, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

## EXTENSION OF TIME

The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval as to Court dates.

IN WITNESS WHEREOF, the Parties and the Parties' Counsel have executed this Agreement of Settlement and Release, in counterpart or otherwise, on the date indicated next to each Party's respective signature, effective as of the date hereinabove mentioned.

NEW WORK CITY, INC., DBA
AMERICAN MEDICAL PERSONNEL

By: _____

Its: _____President_____

Date: _____9/18/17_____

_____

Date: _____9/18/17_____

JASMINE DIAZ

_____

Date: _____

CONSTANCE SHANNON

_____

Date: _____

GLADSTONE HEADQUARTERS, INC., DBA
AMERICAN MEDICAL PERSONNEL

By: _____

Its: _____President_____

Date: _____9/18/17_____

VICKI STANLEY
TONY MONTESANO

_____

Date: _____9/18/17_____

JASMINE JONES

_____

Date: _____

PLAINTIFFS' COUNSEL:

SCOTT & WINTERS LAW FIRM, LLC

_____

Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, Ohio 44115
Telephone:   (440) 498-9100
Facsimile:   (216) 621-0194
Email:  rwinters@ohiowagelawyers.com

Date: _____

DEFENDANTS' COUNSEL:

TZANGAS | PLAKAS | MANNOS | LTD

_____

Lee E. Plakas (0008628)
David L. Dingwell (0059159)
Edmond J. Mack (0082906)
220 Market Avenue South, Eighth Floor
Canton, Ohio 44702
Telephone:   (330) 455-6112
Facsimile:   (330) 455-2108
Email:            emack@lawlion.com

Date: _____9/18/17_____

13

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JASMINE DIAZ, ET AL.                                    :
                                                                        :     Case No.:  5:16-cv-02319
        Plaintiffs,                                   :
                                                                        :     Judge:  Hon. Sara Lioi
-vs.-                                                               :
                                                                        :
NEW WORK CITY, INC., DBA                            :
AMERICAN MEDICAL PERSONNEL,          :
ET AL.                                                             :
                                                                        :
        Defendants.                                :

**FINAL ORDER AND JUDGMENT APPROVING**
**SETTLEMENT AND DISMISSING ACTION**

This matter is before the Court on the parties' Joint Motion for Approval of Settlement ("Joint Motion") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). The Joint Motion asks the Court to approve, as fair and reasonable, the proposed Settlement reached by the parties and memorialized in their Agreement of Settlement and Release ("Settlement Agreement") attached to the Joint Motion as Exhibit 1.

Having reviewed the Settlement Agreement as well as the pleadings and papers filed in this Action, and for good cause established therein, the Court enters this Final Order and Judgment approving the Settlement, the Settlement Agreement, and the other Exhibits, including the Total Settlement Amount, the proposed Individual Payments to Plaintiffs and Opt-Ins listed in the Schedule of Individual Payments (Exhibit 2), the proposed Notice to Potential Opt-Ins with attached Consent and Release Form (Exhibit 3), the proposed service awards to the named Plaintiffs, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' counsel, and the proposed payment of settlement administrative costs to the settlement administrator, as follows:

1.      This Action asserts wage-and-hour claims under the FLSA, 29 U.S.C. §§ 201-219.

2.      On February 13, 2017, the Plaintiffs filed its Motion for Conditional Certification (Doc. No. 17) pursuant to 29 U.S.C. § 216 of the FLSA, requesting certification of this case on behalf of Plaintiffs and other similarly situated persons.  By filing dated March 13, 2017, Defendants' response to Plaintiffs' Motion (Doc. No. 20) did not object to conditional certification of the FLSA claims and reserved the right to challenge certification later in the proceedings, but it did object to the notice Plaintiffs requested to be sent to the collective action members in connection with conditional certification.  The Court's March 27, 2017 order directed Plaintiffs to submit its reply in support of its Motion for Condition Certification by April 3, 2017.  On March 31, 2017, however, the Parties jointly moved the Court to postpone the ruling upon the pending Motion for Conditional Certification and directing the issuance of any notice related thereto so they could explore avoiding the cost of litigation by exchanging due diligence materials and then negotiating a global FLSA settlement with a private mediator.  (Doc. No. 22).  The requested postponement of notice was granted by the Court and later extended by further stipulation and order.  (Doc. No. 23).

3.      The Settlement will cover Plaintiffs, Jasmine Diaz, Jasmine Jones, and Constance Shannon, as well as Opt-Ins who sign and return Consent and Release Forms opting into the case pursuant to 29 U.S.C. § 216(b) for the purpose of accepting the terms of this settlement.  The Potential Opt-Ins are all present and former hourly employees of New Work City, Inc., dba American Medical Personnel and Gladstone Headquarters, Inc., dba American Medical Personnel who worked as state tested nursing assistants (STNAs) or licensed practical nurses (LPNs) from September 19,

2

2013 to the present who worked in excess of 40 hours per week and were not compensated for each hour worked in excess of 40 hours per week at one and one-half times his or her regular rate of pay.

4.      The Court finds that the proposed Settlement is fair and reasonable and satisfies the standard for approval under the FLSA, 29 U.S.C. § 216(b).

5.      The Court approves the Settlement Agreement and its Exhibits, and orders that the Settlement Agreement be implemented according to its terms and conditions and as directed herein.

6.      The Court finds that the Total Settlement Amount, as well as the proposed Individual Payments to Plaintiffs and Opt-Ins listed in the Schedule of Individual Payments (Exhibit 2), are fair and reasonable. The Court approves the Schedule of Individual Payments and orders that such payments be distributed in the manner, and subject to the terms and conditions, set forth in the Settlement Agreement.

7.      The Court approves the proposed Notice to Potential Opt-Ins with attached Consent and Release Form (Exhibit 3), and directs that it be mailed to Potential Opt-Ins listed in the Schedule of Individual Payments according to the procedures prescribed in the Agreement and in particular the Settlement Administration section thereof. Potential Opt-Ins may obtain Individual Payments by signing and returning Consent and Release Forms by the Consent Deadline, thereby opting into the case pursuant to 29 U.S.C. § 216(b) for the purpose of accepting the terms of this settlement including the release of claims. Consent and Release Forms signed and returned by Opt-Ins shall be filed with the Court as soon as practicable, and may be filed with Clerk subsequent to the entry of this Final Order and Judgment.

3

8.      The Court approves the proposed service awards to Plaintiffs, Jasmine Diaz, Jasmine Jones, and Constance Shannon and orders that such payments be made in the manner, and subject to the terms and conditions, set forth in the Agreement.

9.      The Court approves the payment of attorneys' fees and costs reimbursements to Plaintiffs' Counsel as provided in the Settlement Agreement, and orders that such payment be made in the manner, and subject to the terms and conditions, set forth in the Agreement.

10.     The Court approves the payment of administrative costs to the Settlement Administrator as provided in the Settlement Agreement, and orders that such payment be made in the manner, and subject to the terms and conditions, set forth in the Agreement.

11.     This Action, and all claims of Plaintiffs and of Opt-Ins whose Consent and Release Forms are filed with the Clerk, are dismissed with prejudice. The Court finds there is no just reason for delay and directs the Clerk of the Court to enter this Final Order and Judgment immediately.

12.     As requested by the parties in the Settlement Agreement, the Court retains jurisdiction over the Action to enforce the terms of the Settlement Agreement and resolve any disputes thereunder.

**SO ORDERED:**


Date: _____          _____
                                        Hon. Sara Lioi
                                        United States District Judge

# EXHIBIT 2

**SCHEDULE OF INDIVIDUAL PAYMENTS**
**EXHIBIT 2**

| NO. | EMPLOYEE ID | JOB TITLE | INDIVIDUAL PAYMENT AMOUNT |
|---|---|---|---|
| 1 | 1030 | STNA | $2,157.26 |
| 2 | 1033 | STNA | $26.82 |
| 3 | 1035 | LPN | $164.87 |
| 4 | 1039 | STNA | $99.33 |
| 5 | 1041 | STNA | $5,905.68 |
| 6 | 1042 | STNA | $9,868.82 |
| 7 | 1046 | STNA | $10,264.49 |
| 8 | 1070 | LPN | $366.29 |
| 9 | 1073 | STNA | $3,386.80 |
| 10 | 1080 | STNA | $1,464.64 |
| 11 | 1081 | LPN | $1,908.93 |
| 12 | 1095 | RN | $2,863.81 |
| 13 | 1098 | RN | $2,830.53 |
| 14 | 1100 | STNA | $596.01 |
| 15 | 1115 | LPN | $79.96 |
| 16 | 1126 | LPN | $1,621.61 |
| 17 | 1131 | LPN | $2,239.99 |
| 18 | 1139 | STNA | $18.62 |
| 19 | 1151 | STNA | $2,308.45 |
| 20 | 1154 | STNA | $1,629.58 |
| 21 | 1171 | STNA | $1,918.62 |
| 22 | 1172 | STNA | $67.81 |
| 23 | 1178 | STNA | $1,454.73 |
| 24 | 1189 | LPN | $67.05 |
| 25 | 1201 | STNA | $538.39 |
| 26 | 1203 | LPN | $127.15 |
| 27 | 1204 | STNA | $3,541.74 |
| 28 | 1223 | STNA | $633.38 |
| 29 | 1234 | RN | $8,458.31 |
| 30 | 1235 | STNA | $35.76 |
| 31 | 1245 | STNA | $21.28 |
| 32 | 1250 | STNA | $527.19 |
| 33 | 1259 | STNA | $8,072.78 |
| 34 | 1273 | STNA | $91.88 |
| 35 | 1291 | STNA | $202.88 |
| 36 | 1295 | STNA | $600.83 |
| 37 | 1303 | STNA | $79.09 |
| 38 | 1324 | STNA | $37.25 |
| 39 | 1325 | STNA | $99.33 |
| 40 | 1327 | STNA | $57.38 |
| 41 | 1344 | STNA | $1,025.13 |
| 42 | 1347 | STNA | $2,615.83 |
| 43 | 1353 | STNA | $7,190.81 |
| 44 | 1358 | STNA | $3,223.08 |

**SCHEDULE OF INDIVIDUAL PAYMENTS**
**EXHIBIT 2**

| NO. | EMPLOYEE ID | JOB TITLE | INDIVIDUAL PAYMENT AMOUNT |
|---|---|---|---|
| 45 | 1370 | STNA | $216.31 |
| 46 | 1374 | STNA | $7,878.20 |
| 47 | 1387 | STNA | $705.27 |
| 48 | 1407 | STNA | $488.98 |
| 49 | 1429 | STNA | $776.54 |
| 50 | 1437 | STNA | $95.36 |
| 51 | 1451 | STNA | $44.70 |
| 52 | 1464 | STNA | $1,419.17 |
| 53 | 1467 | STNA | $74.24 |
| 54 | 1474 | RN | $71.52 |
| 55 | 1487 | STNA | $1,042.77 |
| 56 | 1522 | STNA | $858.39 |
| 57 | 1527 | STNA | $2,110.83 |
| 58 | 1531 | STNA | $1,679.90 |
| 59 | 1540 | STNA | $382.44 |
| 60 | 1543 | STNA | $906.41 |
| 61 | 1553 | STNA | $177.31 |
| 62 | 1567 | STNA | $51.91 |
| 63 | 1571 | STNA | $662.06 |
| 64 | 1579 | STNA | $37.13 |
| 65 | 1590 | STNA | $175.09 |
| 66 | 1592 | LPN | $158.93 |
| 67 | 1598 | RN | $1,785.53 |
| 68 | 1604 | STNA | $32.78 |
| 69 | 1621 | STNA | $101.32 |
| 70 | 1622 | STNA | $542.11 |
| 71 | 1627 | STNA | $566.44 |
| 72 | 1634 | STNA | $2,703.88 |
| 73 | 1651 | STNA | $2.86 |
| 74 | 1661 | STNA | $2,146.61 |
| 75 | 1669 | LPN | $127.15 |
| 76 | 1671 | STNA | $4,240.44 |
| 77 | 1686 | STNA | $242.73 |
| 78 | 1694 | LPN | $333.27 |
| 79 | 1695 | STNA | $261.11 |
| 80 | 1703 | RN | $206.62 |
| 81 | 1716 | STNA | $963.90 |
| 82 | 1723 | STNA | $459.66 |
| 83 | 1733 | STNA | $57.38 |
| 84 | 1735 | STNA | $1,329.29 |
| 85 | 1741 | LPN | $57.00 |
| 86 | 1745 | RN | $245.36 |
| 87 | 1746 | STNA | $1,376.34 |
| 88 | 1751 | STNA | $240.65 |

**SCHEDULE OF INDIVIDUAL PAYMENTS**

**EXHIBIT 2**

| NO. | EMPLOYEE ID | JOB TITLE | INDIVIDUAL PAYMENT AMOUNT |
|-----|-------------|-----------|---------------------------|
| 89 | 1764 | LPN | $152.97 |
| 90 | 1769 | STNA | $1,159.23 |
| 91 | 1778 | STNA | $481.91 |
| 92 | 1781 | STNA | $700.05 |
| 93 | 1782 | STNA | $71.52 |
| 94 | 1787 | STNA | $81.95 |
| 95 | 1798 | STNA | $54.26 |
| 96 | 1810 | STNA | $212.34 |
| 97 | 1816 | STNA | $176.32 |
| 98 | 1819 | STNA | $62.82 |
| 99 | 1824 | STNA | $170.74 |
| 100 | 1827 | STNA | $132.37 |
| 101 | 1830 | STNA | $226.01 |
| 102 | 1834 | STNA | $242.38 |
| 103 | 1836 | STNA | $21.85 |
| 104 | 1845 | STNA | $16.39 |
| 105 | 1847 | STNA | $45.69 |
| 106 | 1852 | STNA | $284.35 |
| 107 | 1857 | LPN | $3,742.16 |
| 108 | 1861 | STNA | $328.18 |
| 109 | 1868 | STNA | $121.07 |
| 110 | 1869 | STNA | $409.00 |
| 111 | 1871 | STNA | $82.82 |
| 112 | 1880 | STNA | $199.40 |
| 113 | 1883 | STNA | $77.48 |
| 114 | 1886 | STNA | $4,468.35 |
| 115 | 1888 | STNA | $171.35 |
| 116 | 1890 | STNA | $15,891.17 |
| 117 | 1891 | STNA | $2,126.23 |
| 118 | 1892 | STNA | $506.39 |
| 119 | 1899 | LPN | $2,124.68 |
| 120 | 1900 | STNA | $296.12 |
| 121 | 1902 | STNA | $20.13 |
| 122 | 1909 | STNA | $39.97 |
| 123 | 1914 | LPN | $15,340.84 |
| 124 | 1941 | STNA | $1,626.34 |
| 125 | 1945 | STNA | $1,911.69 |
| 126 | 1951 | STNA | $133.84 |
| 127 | 1952 | LPN | $399.32 |
| 128 | 1954 | STNA | $5,579.25 |
| 129 | 1955 | RN | $357.60 |
| 130 | 1956 | STNA | $999.56 |
| 131 | 1957 | STNA | $7,261.89 |
| 132 | 1962 | STNA | $161.42 |

**SCHEDULE OF INDIVIDUAL PAYMENTS**
**EXHIBIT 2**

| NO. | EMPLOYEE ID | JOB TITLE | INDIVIDUAL PAYMENT AMOUNT |
|---|---|---|---|
| 133 | 1964 | RN | $15.89 |
| 134 | 1967 | STNA | $458.92 |
| 135 | 1973 | STNA | $33.77 |
| 136 | 1975 | STNA | $65.56 |
| 137 | 1976 | STNA | $816.03 |
| 138 | 1978 | STNA | $163.90 |
| 139 | 1987 | STNA | $25.83 |
| 140 | 1989 | STNA | $59.60 |
| 141 | 1990 | STNA | $5,128.65 |
| 142 | 2013 | LPN | $5.21 |
| 143 | 2015 | STNA | $609.40 |
| 144 | 2017 | STNA | $93.87 |
| 145 | 2019 | STNA | $182.78 |
| 146 | 2020 | STNA | $211.30 |
| 147 | 2021 | STNA | $172.09 |
| 148 | 2025 | STNA | $54.63 |
| 149 | 2026 | STNA | $204.87 |
| 150 | 2028 | STNA | $705.77 |
| 151 | 2032 | STNA | $57.12 |
| 152 | 2036 | LPN | $609.40 |
| 153 | 2039 | STNA | $319.86 |
| 154 | 2064 | STNA | $161.42 |
| 155 | 2069 | STNA | $90.51 |
| 156 | 2079 | STNA | $1,155.85 |
| 157 | 2086 | LPN | $262.24 |
| 158 | 2088 | STNA | $64.57 |
| 159 | 2089 | LPN | $89.40 |
| 160 | 2092 | STNA | $6.95 |
| 161 | 2101 | STNA | $1,807.59 |
| 162 | 2107 | LPN | $22.85 |
| 163 | 2113 | STNA | $45.20 |
| 164 | 2114 | STNA | $1,189.27 |
| 165 | 2116 | LPN | $5,784.89 |
| 166 | 2119 | STNA | $885.31 |
| 167 | 2125 | STNA | $58.73 |
| 168 | 2132 | STNA | $1,278.25 |
| 169 | 2140 | STNA | $137.08 |
| 170 | 2144 | LPN | $41.72 |
| 171 | 2164 | STNA | $9.32 |
| 172 | 2168 | STNA | $488.35 |
| 173 | 2169 | LPN | $752.95 |
| 174 | 2174 | LPN | $101.32 |
| 175 | 2175 | STNA | $1,322.10 |
| 176 | 2176 | STNA | $328.88 |

**SCHEDULE OF INDIVIDUAL PAYMENTS**

**EXHIBIT 2**

| NO. | EMPLOYEE ID | JOB TITLE | INDIVIDUAL PAYMENT AMOUNT |
|-----|-------------|-----------|---------------------------|
| 177 | 2178 | LPN | $919.46 |
| 178 | 2183 | STNA | $77.48 |
| 179 | 2186 | STNA | $335.73 |
| 180 | 2187 | STNA | $203.87 |
| 181 | 2188 | STNA | $30.04 |
| 182 | 2202 | LPN | $502.63 |
| 183 | 2207 | STNA | $427.63 |
| 184 | 2209 | STNA | $10.43 |
| 185 | 2212 | LPN | $480.28 |
| 186 | 2216 | STNA | $55.63 |
| 187 | 2219 | STNA | $5.96 |
| 188 | 2225 | STNA | $134.10 |
| 189 | 2226 | STNA | $208.66 |
| 190 | 2227 | STNA | $898.22 |
| 191 | 2229 | LPN | $84.43 |
| 192 | 2233 | LPN | $89.40 |
| 193 | 2239 | STNA | $1,063.87 |
| 194 | 2241 | LPN | $16.39 |
| 195 | 2243 | STNA | $65.18 |
| 196 | 2249 | STNA | $1,003.73 |
| 197 | 2261 | STNA | $68.54 |
| 198 | 2269 | STNA | $74.24 |
| 199 | 2282 | STNA | $73.13 |
| 200 | 2290 | STNA | $64.57 |
| 201 | 2292 | RN | $26.82 |
| 202 | 2293 | STNA | $17.88 |
| 203 | 2296 | STNA | $131.12 |
| 204 | 2303 | STNA | $163.15 |
| 205 | 2307 | STNA | $122.68 |
| 206 | 2311 | STNA | $95.36 |
| 207 | 2330 | STNA | $95.36 |
| 208 | 2334 | STNA | $93.12 |
| 209 | 2343 | STNA | $89.40 |
| 210 | 2348 | RN | $22.35 |
| 211 | 2357 | STNA | $21.71 |
| 212 | 2358 | STNA | $224.00 |
| 213 | 2367 | STNA | $114.97 |
| 214 | 2415 | STNA | $61.33 |
| 215 | 2435 | LPN | $79.96 |
| 216 | 2439 | LPN | $158.44 |
| 217 | 2450 | STNA | $122.68 |
| 218 | 2461 | LPN | $5.46 |
| 219 | 2466 | STNA | $51.65 |
| 220 | 2473 | STNA | $13.91 |

**SCHEDULE OF INDIVIDUAL PAYMENTS**
**EXHIBIT 2**

| NO. | EMPLOYEE ID | JOB TITLE | INDIVIDUAL PAYMENT AMOUNT |
|-----|-------------|-----------|---------------------------|
| 221 | 2500 | STNA | $29.80 |
| 222 | 2502 | STNA | $49.67 |
| 223 | 2664 | STNA | $40.97 |

# EXHIBIT 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LAWSUIT SETTLEMENT NOTICE**

*Diaz, et al. v. New Work City, Inc., et al.*, Case No. 5:16-cv-02319

BARCODE                          Changes/Corrections (if any):
CLASS MEMBER NAME
ADDR1                            _____
ADDR2                            _____
CITY STATE ZIP CODE              _____

You are receiving this Notice because you are currently or were previously employed by New Work City, Inc., dba American Medical Personnel or Gladstone Headquarters, Inc., dba American Medical Personnel ("the Company") and are eligible to participate in a settlement of a lawsuit involving the Company. The United States District Court for the Northern District of Ohio has authorized this Notice.

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

**If you sign and return the enclosed Opt-In Consent and Release Form (and complete the enclosed W-9 and W-4 tax forms)** you will receive a settlement payment in the amount of $_____.  You must sign and return the enclosed Consent and Release Form (along with completed W-9 and W- 4 forms) no later than [INSERT 60 CALENDAR DAYS FROM MAILING].

**If you do nothing:** You will not receive any payment from the settlement, and you will not be able to participate in the settlement, nor will you be subject to the settlement in this case.

**1.  What is the lawsuit about?**
Plaintiffs claim that the Company did not correctly pay certain non-exempt state tested nursing assistants (STNAs) and licensed practical nurses (LPNs) employees for all overtime worked in one or more work-weeks between September 19, 2013 and August 31, 2017. The Company denies that it did anything improper, and maintains that it properly paid its STNA and LPN non-exempt personnel for all time worked.  The Court did not decide which side was right.  Both sides agreed to the settlement to resolve the case.

**2.  Why did I receive this Notice?**
A settlement has been agreed upon in a collective action lawsuit against the Company, styled *Diaz, et al. v. New Work City, Inc., et al.*, Case No. 5:16-cv-02319. You are receiving this Notice because the Company's records reflect that you are a potential opt-in member.

**3.  How can I participate in the settlement?**
To participate in the settlement and receive your settlement payment, you must sign and return the enclosed Opt-In Consent and Release Form. By signing the form, you will release all federal, state, and local unpaid overtime claims you may have arising from your employment as a STNA or LPN non-exempt employee with the Company through **[EFFECTIVE DATE].** You must also complete and return the enclosed W-9 and W-4 tax forms.

**4.  What is my portion of the settlement?**
The settlement amount is based on a formula that takes into account the amount of hours you worked in excess of 40 hours per week and the rate of pay you received during the time period covered by the

lawsuit (roughly three years). If you sign and return the Opt-In Consent and Release Form (and the W-4 and W-9 tax forms) by **[INSERT 60 CALENDAR DAYS FROM MAILING],** you will receive your settlement payment.

**5.   If I decide to participate in the settlement, will my settlement amount be taxed?**
One half of this payment is considered wages and shall be subject to the withholding of all applicable local, state, and federal taxes, and shall appear on a Form W-2. The remaining one-half payment is considered liquidated damages, penalties and interest, and you will be responsible for paying the appropriate taxes on the amount. This amount will appear on a Form 1099. Please consult with your accountant or other tax advisor regarding the tax consequences of the settlement amount paid to you.

**6.   What do I give up by agreeing to the settlement amount?**
The Court has approved this settlement. <u>By signing and returning the Opt-In Consent and Release Form, you agree not to sue New Work City, Inc., dba American Medical Personnel and Gladstone Headquarters, Inc., dba American Medical Personnel, including their predecessors, successors and assigns, their current and former direct and indirect parents, affiliates, subsidiaries, divisions, and related business entities, directors, shareholders, employees, agents, and representatives for these same claims and you also will release all federal, state, and local off-the-clock and unpaid overtime compensation wage claims arising from your employment as a STNA or LPN non-exempt employee with the Company through</u> **[EFFECTIVE DATE].**

**7.   What happens if I do not sign the enclosed Opt-In Consent and Release Form?**
<u>You can choose to do nothing. If you do not sign and return the enclosed Opt-In Consent and Release Form, you will not receive any payment from the settlement, you will not be able to participate in the settlement, and you will not be subject to the settlement in this case.</u> The lawsuit and the settlement will have no effect on you. Because of the operative statute of limitations applicable to this case, if you do not join this settlement you may lose any right, if any such right exists, to recover these claims in the future.

**8.   What happens if I don't return the Opt-In Consent and Release Form on time?**
Failure to return the Opt-In Consent and Release Form on or before the deadline will prevent you from participating in the settlement. You should keep a record of mailing to verify the date it was mailed.

**9.   Will the Company take any adverse action against me if I sign the enclosed Opt-In Consent and Release Form?**
No. If you currently work for the Company, you will not be retaliated against for participating in this settlement. If you no longer work for the Company, acceptance will not in any way affect your eligibility for future employment with the Company.

**10. How do I get additional information?**
If you want to ask questions when deciding whether to accept this offer, or need to change your address, you may contact Dahl Administration, a third party that has been retained to administer this process at 1-800 NUMBER OR EMAIL ADDRESS. Please do not contact the Court. You may also contact Plaintiffs' counsel Ryan A. Winters at 440-498-9100.

**<u>PLAINTIFFS' COUNSEL</u>**
The attorneys who represent the named Plaintiffs are: Joseph F. Scott, Ryan A. Winters, and Kevin M. McDermott II, Scott & Winters Law Firm, LLC, The Superior Building, 815 Superior Avenue E., Suite 1325, Cleveland, OH 44114, 440-498-9100, rwinters@ohiowagelawyers.com.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JASMINE DIAZ, JASMINE JONES, | : | |
| AND CONSTANCE SHANNON, ON | : | Case No.: 5:16-cv-02319 |
| BEHALF OF THEMSELVES AND | : | |
| OTHERS SIMILARLY SITUATED | : | Judge: Hon. Sara Lioi |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -vs.- | : | |
| | : | |
| NEW WORK CITY, INC., DBA | : | |
| AMERICAN MEDICAL PERSONNEL, | : | |
| GLADSTONE HEADQUARTERS, INC., | : | |
| DBA AMERICAN MEDICAL | : | |
| PERSONNEL, VICKI STANLEY, AND | : | |
| TONY MONTESANO | : | |
| | : | |
| Defendants. | : | |

## CONSENT AND RELEASE FORM TO PARTICIPATE IN SETTLEMENT, INCLUDING RELEASE OF CLAIMS

I hereby consent and agree to opt into and participate in the settlement of this action.

In exchange for a settlement payment in accordance with the court-approved settlement in this action, I agree and understand that I will release any and all federal, state, and local wage and hour claims for off-the-clock work, unpaid wages, unpaid overtime compensation, penalties, liquidated damages, interest or other wage claims that arose during the course of my employment with Defendants through [EFFECTIVE DATE].

DATE:_____

_____
SIGNATURE

_____
PRINTED NAME