IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JASMINE DIAZ, *et al.*, | |
| | Case No.: 5:16-cv-02319 |
| Plaintiffs, | |
| | JUDGE SARA LIOI |
| v. | |
| | |
| NEW WORK CITY, INC., DBA AMERICAN MEDICAL PERSONNEL, *et al.*, | **DECLARATION OF PLAINTIFFS' COUNSEL RYAN A. WINTERS** |
| Defendants. | |

I, Ryan A. Winters, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my personal knowledge, information, and belief:

**EDUCATION AND EXPERIENCE**

1. I graduated from the University of Iowa in 2010. I subsequently passed the Ohio Bar examination and was admitted to practice of law in the State of Ohio in November, 2010. I am admitted to the United States District Court for the Northern District of Ohio and the United States District Court for the Southern District of Ohio.

2. My professional career has been focused on employment litigation generally, and wage and hour civil litigation specifically. I have served as co- and lead counsel in over 65 wage and hour matters brought in the United States District Court for the Northern District of Ohio, in the United States District Court for the Southern District of Ohio, the Cuyahoga County Court of Common Pleas, and elsewhere.

3. Within a few months of starting practice, I began work on large scale wage and

hour litigation. I have over 6 years of civil litigation experience. I have been rated an Ohio Rising Star by Super Lawyers. This award recognizes the top 2.5% of attorneys 40 years old and under practicing in Ohio.

4. Representative matters involving claims specifically arising under the Fair Labor Standards Act and analogous Ohio laws in which I have served as lead or co-counsel include the following.

- *Siegfried et al. v. Takeda Pharm. North America, Inc*., Case No., 1:11-cv-02591 (N.D. Ill. April 14, 2011) (nationwide FLSA Collective Action);

- *Aaron Mandour v. Newman Technology, Inc.*, United States District Court for the Northern District of Ohio, case no. 1:13CV1222;

- *Glass v. Pfizer, Inc.*, Case No. 1:11-cv-02651 (N.D. Ohio August 9, 2011) (Ohio Rule 23 class action);

- *Watson v. Carney Heating & Coling, LLC*, et al., United States District Court for the Southern District of Ohio, case no. 1:11CV744;

- *Newsom v. G & L Media, LLC*, et al., United States District Court for the Southern District of Ohio, case no. 3:14CV00028;

- *Rogers v. Lockwood Investment Group, LLC*, et al., United States District Court for the Southern District of Ohio, case no. 2:14CV0029;

- *Stein v. Garfield Jewelers, LLC*, et al., United States District Court for the Northern District of Ohio, case no. 1:12CV01855;

- *Hume v. Ron Carrocce Trucking, Inc.*, et al., United States District Court for the Northern District of Ohio, case no. 4:12CV1106;

- *Hill v. Martin Logistics, Inc.*, et al., United States District Court for the Northern District of Ohio, case no. 5:13CV0186;

- *Hodges v. Salvanalle, Inc.*, et al., United States District Court for the Northern District of Ohio, case no. 1:12CV02851;

- *Pearson v. CSK Auto, Inc.*, United States District Court for the Northern District of Ohio, case no. 1:12CV2905;

- *William Walker, et al. v. Reliable Runners Courier Service, Inc.*, United

2

      States District Court for the Northern District of Ohio, case no. 1:15 CV 00760;

- *Stacy Best, et al. v. Stuchell Products, LLC*, et al., United States District Court for the Northern District of Ohio, case no. 5:14 CV 1625; and

- *Lynn Lambert, et al. v. Ameri-Mark Direct, LLC, et al.*, United States District Court for the Northern District of Ohio, case no. 1:15 CV 01230.

- *Denaya Jackson, et al. v. TruBridge, Inc.*, United States District Court for the Northern District of Ohio, case no. 5:16-cv-00223.

## THE SETTLEMENT OF THE ABOVE-CAPTIONED CASE

5. I am knowledgeable about the claims, issues, litigation, and settlement of the captioned case.

### A. The Claims and Issues

6. Plaintiffs filed this Action in the United States District Court for the Northern District of Ohio, Eastern Division on September 19, 2017. (Doc 1.) Plaintiffs' Complaint alleged that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime compensation to Plaintiffs and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek by issuing checks on a daily, twice-weekly or other short-term basis without properly tracking and compensating overtime hours worked, and by failing to pay travel time between client facilities during weeks in which hourly employees worked 40 or more hours. (*Id.* at ¶¶ 20-25.) Defendants filed an Answer to Plaintiffs' Complaint, denying all liability under any of Plaintiffs' claims. (Doc. 13.)

7. On February 13, 2017, Plaintiffs moved the Court to conditionally certify this case as an FLSA collective action pursuant to 29 U.S.C. § 216(b), expedite opt-in discovery, and provide court-supervised notice to the potential opt-in Plaintiffs, attaching declarations from

Plaintiffs Jasmine Diaz, Jasmine Jones, and Constance Shannon (Doc. 17.) Though Defendants did not contest conditional certification of Plaintiffs' claims under the FLSA, Defendants objected to aspects of the notice the Plaintiffs requested the Court to approve, and expressly indicated opposition to the certifiability of Plaintiffs' claims under Ohio's wage-and-hour statute, R.C. § 4111.01, *et seq.* (Doc. 20, 1-2.)

### B. Discovery and Document Analysis

8. Prior to Plaintiffs' reply to Defendants' opposition to Plaintiffs' Motion for Conditional Certification, the parties jointly moved the Court for an extension of time to discuss a possible stay in order to pursue a due diligence exchange of information, settlement discussions, and mediation, (Doc. 21), which was approved by the Court (March 27, 2017 Order). Subsequently, on March 31, 2017, the parties jointly moved for the matter to be placed on inactive status for sixty days, pending the outcome of a due diligence exchange of documents and information, including a randomly selected sample of 10% of the putative opt-in class (Doc. 22), which was also granted by the Court (April 7, 2017 Order). Following considerable progress, including the production of unredacted pages of wage and hour records by Defendants of the randomly selected sample of 10% of the putative opt-in class, the parties filed a second sixty day extension to continue the due diligence exchange of materials so as to enable the negotiation of a possible global FLSA settlement with a private mediator. (Doc. 23, 1.) The Court subsequently granted the parties' second stipulation and joint motion for continued postponement of notice. (May 31, 2017 Order.)

9. The parties engaged in extensive discovery, and Defendants ultimately produced over 5,342 unredacted pages of voluminous wage-and-hour data and documents necessary to fully and fairly evaluate the claims of the Plaintiffs and Potential Opt-Ins. Prior to entering into

4

settlement negotiations, Plaintiffs' counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and back-up data and documents; Plaintiffs' counsel ultimately created spreadsheets for each member of the sample of 10% of the putative opt-in class and the named Plaintiffs collectively comprising of more than 85,000 data points from the wage and hour records produced by Defendants. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and compile estimates of the claimed damages. The analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## SETTLEMENT NEGOTIATIONS

10. On August 16, 2017, the parties engaged in settlement negotiations in Canton, Ohio with the assistance of experienced and effective Mediator Scott M. Zurakowski.

11. The mediation was successful, resulting in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). Negotiations were conducted in two phases. The parties first reached an agreement regarding a total settlement amount to be made available to Plaintiffs and Opt-Ins, and then separately reached an agreement on Plaintiffs' counsel's attorneys' fees, cost reimbursements, and settlement administrative costs imbursements.

12. A handwritten Memorandum of Agreement was prepared and signed by the parties' counsel in the presence of the Mediator. Formal settlement documents, including the Agreement attached as Exhibit 1, were later prepared and executed for approval by the Court.

## THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A. The Scope of Settlement

13. If approved by the Court, the proposed Settlement will resolve disputed wage-

and-hour claims based upon federal and state law, including overtime and minimum wage claims.

### B. The Proposed Settlement Payments and Distributions

14. <u>Total Settlement Amount</u>.  Defendants have agreed to pay a fixed amount as set forth in the Settlement Agreement (Exhibit 1), which amount will be used to make individual settlement payments to each of the Named and Opt-In Plaintiffs.

15. <u>Payments</u>. The Net Proceeds of the Settlement—that is, the Total Settlement Amount after deduction of Service Awards, Individual Settlements, Attorneys' Fees and Cost Reimbursements, and settlement administration costs—will be made available to the Named and Opt-In Plaintiffs in individual settlement payments.

16. <u>Method of Allocation</u>.  The proposed method of allocating the Named and Opt-In Plaintiffs is reasonable and fair to all.  The result in this case was exemplary. As a result of this negotiated settlement, and without Defendants admitting liability, all opt-in Plaintiffs will receive 100% of their alleged unpaid overtime <u>and</u> 99% of the liquidated damages they could have received had they proven a willful violation under 29 U.S.C. § 216(b). Without question this collective action settlement represents a fair, just, and reasonable resolution of this case.

17. <u>Service Awards</u>.  The proposed Settlement provides for service awards to Plaintiffs Jasmine Diaz, Jasmine Diaz, and Constance Shannon in the amount of $5,000 each in recognition of their assistance to Plaintiffs' Counsel and their contribution to achieving the Settlement on behalf of all Opt-Ins.  The proposed service awards were well-earned.  All three Plaintiffs consulted with Plaintiffs' counsel at critical stages and provided important documents and information throughout the course of the litigation.

18. <u>Attorneys' Fees and Cost Reimbursements</u>.  The proposed settlement includes a

payment of attorneys' fees to Plaintiffs' counsel, as well as out-of-pocket litigation costs. The attorneys' fees were negotiated separately from the payments by Defendant to the Named and Opt-In Plaintiffs. The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel (Exhibit 5).

    **C.**    **Releases**

19.    In return for their settlement payments, the Named and Opt-In Plaintiffs agree to release Defendants and dismiss their claims with prejudice, as set forth in the Settlement Agreement.

## THE PROPRIETY OF APPROVAL

20.    Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendant's liability but also employees' damages. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Named and Opt-In Plaintiffs.

21.    Given the factual and legal complexity of the issues in this case, there is no guarantee that Plaintiffs will prevail at trial and the litigation could be long and protracted. Nevertheless, without Defendants admitting liability, all opt-in Plaintiffs will receive 100% of their alleged unpaid overtime <u>and</u> 99% of the liquidated damages they could have received had they proven a willful violation under 29 U.S.C. § 216(b). Given the uncertainties surrounding a possible trial in this matter, the certainty and finality of a settlement that will substantially benefit the Named and Opt-In Plaintiffs is in the public interest.

    **B.**    **The Settlement Payments Are Fair, Reasonable, and Adequate**

22.    The proposed Settlement will make individual settlement payments available to the Named and Opt-In Plaintiffs representing virtually all possible recovery based on their

claimed damages.  The proposed allocations are reasonable and fair to all.

        **C.**        <u>**The Service Awards Are Proper and Reasonable**</u>

23.        The proposed Settlement provides for service awards to Plaintiffs Jasmine Diaz, Jasmine Diaz, and Constance Shannon in the amount of $5,000 each in recognition of their assistance to Plaintiffs' Counsel and their contribution to achieving the Settlement on behalf of all Opt-Ins.  The proposed service awards were well-earned.  All three Plaintiffs consulted with Plaintiffs' counsel at critical stages and provided important documents and information throughout the course of the litigation. The service awards are within the range generally approved within the Sixth Circuit.

        **D.**        <u>**The Attorneys' Fees Are Proper and Reasonable**</u>

24.        The amount agreed upon for attorneys' fees satisfies the Sixth Circuit's standard for FLSA settlements.

25.        The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).  In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."  *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir. 1984)).

26.        Courts look favorably on separate negotiation of FLSA damages and attorneys' fees.  *Cisek v. Natl Surface Cleaning, Inc.*, 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997); *Cruz v.*

*Vel-A-Da, Inc.*, 1993 WL 659253 (N.D. Ohio 1993).

27. In the present case, the efforts of Plaintiff's counsel resulted in proposed settlement payments to the named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The proposed payment to Plaintiff's counsel—negotiated subsequently and separately from the payments to Plaintiff and Opt-Ins—is the result of hard bargaining and represents a significant reduction from the total fees and costs expended in the prosecution of the Action.

28. Prosecuting complex litigation on a class basis is always difficult and time-consuming. The tasks required of Plaintiffs' counsel in this case included pre-litigation investigation of Plaintiffs' claims; preparation of the Complaint, Amended Complaint; filing for certification, review of thousands of pages of documentary evidence, negotiation and submission of the parties' Rule 26(f) report; in-person and telephonic conferences with the Court. The proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' counsel is proper and reasonable based on all relevant factors, and fulfills the purpose and intent of the FLSA's fees provision.

s/ Ryan A. Winters

Ryan A. Winters (0086917)
Scott & Winters Law Firm, LLC
The Superior Building
812 Huron Road E. Ste. 490
Cleveland, OH  44115
440-498-9100
rwinters@ohiowagelawyers.com

Counsel for Plaintiffs

October 5, 2017